UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALYSA OCASIO, et al.,

                            Plaintiffs,

            v.

CITY OF CANANDAIGUA, et al.,

                            Defendants.

_____

DECISION & ORDER

18-CV-6712DGL

## **PRELIMINARY STATEMENT**

            Plaintiffs' claims in this case arise from the tragic death of Sandy Guardiola

("Guardiola"), a parole officer with the New York State Department of Corrections and

Community Service ("Parole" or "DOCCS").  (Docket # 88).  On October 4, 2017, she was shot

several times by defendant Canandaigua Police Sergeant Scott Kadien ("Kadien") while she was

at home in her bed and died shortly thereafter.  (*Id.* at ¶¶ 1-11).  Kadien had entered her

residence in response to a 911 call made by defendant Thomas O'Connor ("O'Connor"), a Parole

Supervisor in the Canandaigua Parole Office.  (*Id.*).  O'Connor had requested that a welfare

check on Guardiola be conducted and had reported that no one in Parole had heard from her for

three weeks.  (*Id.*).  In fact, she had been on approved medical leave for approximately one

month and had been expected to return to work in the Binghamton Parole Office that day or the

next.  (*Id.*).  Plaintiffs allege that as Kadien entered her bedroom, Guardiola, who had been

asleep, awoke and reached toward her pillow where she kept her service revolver, and Kadien

shot her.  (*Id.*).  Plaintiffs have asserted claims against DOCCS employees Kadien, O'Connor,

Dawn Anderson, Chief of the Rochester Parole Office, and Beth Hart-Bader, Senior Parole

Officer in the Rochester Parole Office (collectively, the "State Defendants"), and the City of Canandaigua and its Police Chief. (Docket # 88).[1]

Pending before the Court is a motion by plaintiffs, Guardiola's heirs and administratrix, to amend the Complaint to add claims against Grant Scriven ("Scriven"), Regional Director of DOCCS. (Docket # 142). Specifically, the proposed Second Amended Complaint asserts claims against him under 42 U.S.C. Section 1983 and the New York State Constitution and law. (Docket # 143-2 at ¶¶ 145-64, 175-87, 193-98). Plaintiffs represent that they learned through discovery, which was provided after the three-year limitations period applicable to Section 1983 claims, that Scriven had ordered O'Connor to make the 911 call and had told him that no one in Parole had heard from Guardiola for three weeks. (Docket # 144). According to plaintiffs, Scriven knew that information was false and indeed had likely communicated with Guardiola in the days before her death. (*Id.* at 9-11). The State Defendants oppose the motion to amend to name Scriven as an additional defendant on the grounds that the claims against him would be barred by the statute of limitations and the motion thus would be futile. (Docket # 152-4). Plaintiffs counter that the claims are timely because they relate back to the original complaint under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure. (Docket # 153).

---

[1] The district court granted in part motions to dismiss the original complaint filed by Kadien and the City of Canandaigua defendants. (Docket # 82). In that decision, Judge Larimer dismissed the Section 1983 conspiracy claim against Kadien, the *Monell* claim against the City to the extent that it was premised on theories of ratification and/or acquiescence, and the Section 1983 claim for governmental interference with familial relationships. (*Id.*). He granted leave to replead, within twenty days, the dismissed Section 1983 and *Monell* claims with sufficient detail to state plausible claims. (*Id.*). Plaintiffs filed a First Amended Complaint on January 26, 2021, which repled and modified only the dismissed Section 1983 conspiracy claim. (Docket # 88). None of the defendants moved to dismiss the amended complaint.

In addition, the original complaint also asserted claims against the owner and property manager of the apartment complex where Guardiola lived. (Docket # 1). Those claims have since been resolved. (Docket ## 82 at 21; 83).

This Court conducted oral argument on plaintiffs' motion to amend on August 24, 2022. (Docket # 162). Thereafter, the Court permitted the parties leave to file supplemental submissions on the issue of the relation-back doctrine, and it has considered those submissions. (Docket ## 162-164). For the reasons explained more fully below, this Court finds that the proposed claims against Scriven do not relate back to the original complaint under Rule 15(c)(1)(C), but cannot determine that the claims would clearly be futile. The circumstances of this case implicate the doctrines of equitable tolling and equitable estoppel, which, if applicable, could defeat the State Defendants' reliance on the limitations bar.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs filed their original complaint on October 4, 2018, exactly two years before the expiration of the three-year limitations period applicable to Section 1983 claims. (Docket # 1). As relevant to the pending motion, plaintiffs asserted that defendant O'Connor called 911 at approximately 4:30 p.m. on October 4, 2017, "requesting a welfare check, claiming that Ms. Guardiola had been missing from work for three weeks." (*Id.* at ¶ 63). The next paragraph in the Complaint alleged:

> The circumstances surrounding why Defendant O'Connor would have called in this welfare check are not fully known at this time. However, Ms. Guardiola was being harassed and bullied by employees in the Rochester [Parole] office, which led her to request a transfer, and this call, upon information and belief, was part of this pattern of harassment.

(*Id.* at ¶ 64). Plaintiffs asserted generally that O'Connor and the other individual Parole defendants "knew or should have known that there was no basis to call in a welfare check on Ms. Guardiola." (*Id.* at ¶ 125).

Following the defendants' service and filing of answers, this Court held a Rule 16 conference on February 12, 2019, and, with input from counsel, issued a scheduling order that same day.  (Docket ## 30, 31).  The scheduling order set deadlines of May 1, 2019 for the parties to produce Rule 26 mandatory disclosures, July 12, 2019 to file motions to amend or add parties, and February 12, 2020 to complete fact discovery.  (Docket # 30).  Although the deadline to complete discovery was extended numerous times (Docket ## 57, 66, 70, 73, 85, 117, 124, 127, 134, 138, 141), the deadlines for production of mandatory disclosures and for filing motions to amend were never extended.  Plaintiffs did not file any motions to amend until July 2022, when the instant motion was filed.  (Docket # 142).

Without explanation, the State Defendants failed to produce mandatory disclosures by the court-ordered deadline of May 1, 2019.  On June 3, 2019, plaintiffs' counsel emailed counsel for the State Defendants the first of many inquiries and demands attempting to obtain the required disclosures.  (Docket # 92-2 at 2).  Two months later, plaintiffs served discovery requests on the State Defendants.  (*Id.* at 14).  Among other things, their First Set of Interrogatories included interrogatories seeking the identity of any employee who "was in contact with Ms. Guardiola [by any means] from the date of her medical leave, on or about September 4, 2017 through October 4, 2017" (Interrogatory 10) (Docket # 143-5 at 6), as well as the identity of any employee who "received or reviewed [Guardiola's] medical leave paperwork from September 4, 2017 through October 4, 2017" (Interrogatory 12) (*id.* at 7).  Relevant documents, including emails, were also requested.  (*Id.* at 8-15).

Plaintiffs' counsel inquired on September 5, 2019 about the State Defendants' outstanding mandatory disclosures and responses to plaintiffs' discovery requests (Docket # 92-2 at 14), which apparently resulted in plaintiffs' agreement to defer the State Defendants'

production until after the New York State Police ("NYSP") file of the incident was unsealed (*id.* at 16). When the NYSP file still had not been unsealed months later, in early April 2020, plaintiffs' counsel requested that the State Defendants respond within thirty days to the outstanding interrogatories, noting "the substantial delay" and their "interest in moving discovery along." (*Id.*).

The NYSP file was eventually unsealed in June 2020 (*see* Docket # 68), but was not produced until August 14, 2020 (Docket # 102). Still, the State Defendants did not produce mandatory disclosures or provide responses to the outstanding discovery requests, prompting plaintiffs' counsel to email defendants' counsel to "remind[]" him of the delinquencies. (Docket # 92-2 at 18). When no responses were forthcoming, plaintiffs' counsel emailed opposing counsel on September 25, 2020 and notified him of their intent to file a motion to compel unless the disclosures and responses were produced by September 30, 2020. (*Id.* at 19).

On September 30, 2020, the State Defendants produced their mandatory disclosures and responses to plaintiffs' discovery requests. Despite the seventeen-month delay in producing mandatory disclosures, the half-page disclosure merely identified as individuals likely to have discoverable information, *see* Fed. R. Civ. P. 26(a)(1)(A)(i), "[t]he parties in th[e] action, staff and witness[es] who are mentioned in the attached documents." (Docket # 143-3 at 3). As for documents the State Defendants might use to support their defenses, *see* Fed. R. Civ. P. 26(a)(1)(A)(ii), they simply identified "NYS Police Investigation File and Agency Records at Bates #s 000001-000206."[2] (*Id.*). Significantly, the State Defendants did not identify Scriven either in response to Interrogatory 10 (seeking identities of all persons who had been in contact with Guardiola about her medical leave) or Interrogatory 12 (seeking identities of all persons

---

[2] The record is unclear whether the State Defendants Bates-stamped any other documents, making it exceedingly difficult to determine when relevant documents were produced.

who had reviewed her medical leave paperwork). The omission of Scriven in both answers is, as plaintiffs later learned and various of the named defendants knew, plainly inaccurate. Moreover, information establishing whether Scriven had reviewed Guardiola's medical leave paperwork, and especially whether he had communicated with her about it, is plainly relevant to his potential liability for directing O'Connor to make a 911 welfare call on the grounds that Parole had not heard from Guardiola for three weeks. To date, the State Defendants apparently have not corrected the inaccurate responses.

In addition to the interrogatory responses, the State Defendants produced some emails on September 30, 2020. (Docket ## 143-3, 143-5). There is no dispute that additional responsive documents were subsequently produced, but the volume and specifics of the late-produced discovery is unclear from this record.

After reviewing the State Defendants' responses, plaintiffs notified counsel of concerns regarding the adequacy of their responses. Following a conference with the Court on October 29, 2020 (Docket ## 73, 74), the parties submitted an agreed-upon schedule, which was approved by the Court, for plaintiffs to provide a letter identifying the deficiencies that they perceived and for defendants to respond in writing to the deficiency letter. (Docket ## 75, 77). Plaintiffs timely provided their deficiency letter (Docket # 92-3), but on the date that the State Defendants had agreed to respond, they asked for a two-month extension (Docket # 92-4 at 2). Plaintiffs agreed to a one-month extension, which was approved by the Court. (Docket ## 92-4 at 2; 85). When that date arrived, defendants' counsel again sought an extension, this time for two weeks, and plaintiffs consented. (Docket # 92-5 at 2). After that date passed too with no response, plaintiffs' counsel emailed defendants' counsel to inquire about their overdue response and advised that they were preparing a motion to compel. (Docket # 92-6). Three days later,

plaintiffs filed their motion to compel further responses to their discovery requests and additional mandatory disclosures. (Docket # 92). Despite requesting a total of four months to respond to plaintiffs' deficiency letter, the State Defendants submitted a two-page response to the motion to compel representing, despite ample evidence to the contrary, that their responses were complete. (Docket # 102). At oral argument on April 14, 2021, this Court granted the motion to compel from the bench and imposed sanctions. (Docket ## 110, 111). On April 27, 2021, the State Defendants produced additional discovery, including what they represented to be the complete DOCCS Office of Special Investigations file concerning Guardiola's death, which contained emails received by and sent to Scriven. (Docket # 152 at ¶¶ 18-19).

In addition to their deficiency letter, plaintiffs also served supplemental interrogatories on the State Defendants in November 2020. (Docket # 92-3). Among other requests, they sought information concerning O'Connor's conversation with the 911 responder, including information and documents that "led" O'Connor to tell the responder that no one from Parole had spoken to Guardiola for three weeks. (*Id.* at 6). Plaintiffs also requested production of a voicemail message from Guardiola to another Parole employee on October 4, 2017 referred to in an email. (*Id.* at 7). Although the Court's April 2021 Order had also ordered the State Defendants to respond to these supplemental requests, they did not serve any responses to the supplemental interrogatories on April 27, 2021. That delinquency, as well as counsel's complete lack of cooperation in settings dates for depositions, including failing even to appear for a scheduled conferral with plaintiffs' counsel on the issue, led plaintiffs to file a second motion to compel. (Docket # 118).

Following the appearance of new counsel for the State Defendants, plaintiffs and new counsel agreed to a deposition schedule, as well as the need for the State Defendants to

produce a "significant amount of outstanding documents discovery in advance of [the] depositions." (Docket # 123). Based upon this agreement, this Court granted the motion to compel, imposed sanctions, and approved the agreed-upon discovery schedule. (Docket # 124). Additional document discovery was produced (Docket # 126), and on September 20, 2021, O'Connor responded to the outstanding supplemental interrogatories (Docket # 143-6). With respect to the interrogatory seeking information about the basis for O'Connor's statement regarding Guardiola's lack of contact with Parole, he responded, "I did not rely on any documents. I relied solely upon information supplied verbally by Grant Scriven." (*Id.* at 11). Despite also serving supplemental responses to the original interrogatories, those responses still did not identify Scriven in response to Interrogatories 10 and 12. (*Id.* at 7, 9).

Defendant O'Connor was deposed on March 17, 2022. (Docket # 143-10). He testified that Scriven was the sole source of the information that he conveyed to the 911 responder that Parole had had no contact with Guardiola in three weeks and that he did not know that such information was false. (*Id.* at 7-8). On June 3, 2022, the State Defendants finally produced the October 3, 2017 voicemail message from Guardiola that was responsive both to plaintiffs' original requests for documents and to their supplemental requests specifically requesting production of that voicemail message. (Docket # 143-12). According to plaintiffs, "[i]f true, th[e] voicemail is direct evidence that Ms. Guardiola had talked to Scriven about her return to work in the days before her death." (Docket # 144 at 11).

On June 24, 2022, plaintiffs provided defendants with the proposed Second Amended Complaint, and defendants indicated that they would oppose it. (Docket # 140). On July 18, 2022, plaintiffs filed the pending motion for leave to file the Second Amended Complaint, which among other things, adds Scriven as a defendant.

**<u>DISCUSSION</u>**

Plaintiffs move to amend the First Amended Complaint in several respects.  First, they seek to add Grant Scriven as a defendant and assert Section 1983 and pendent state law claims against him.[3]  (Docket ## 143-2 at ¶¶ 145-64, 175-87, 193-201; 144).  In addition, they propose adding factual allegations, largely related to Scriven's alleged involvement in the call to 911 for a welfare check.  (Docket # 143-2 at ¶¶ 3, 5-7, 12, 29, 43-49, 57-66, 76-84, 87, 101).  Although unaddressed in their memorandum of law, various of the claims previously dismissed by Judge Larimer are also reasserted in their proposed Second Amended Complaint.  Finally, they remove references and allegations to the defendants with which they have resolved their claims.

## I.    <u>Applicable Law</u>

Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which shall be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a).  If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989).  "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

---

[3] Despite the inclusion of proposed state law claims against Scriven, the State Defendants categorize them as Section 1983 claims subject to the three-year statute of limitations applicable to those types of claims.  (*See* Docket # 152-4 at 4).  To the extent that any of the pendent claims may be subject to a shorter limitations period, that issue, which is an affirmative defense, is not addressed herein; it may be asserted in the State Defendants' answer or motion to dismiss the Second Amended Complaint.

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). While the court retains discretion to grant or deny leave to amend under Rule 15(a), "[the] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* at 182; *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46 (2d Cir. 1983).

Despite the ordinarily lenient standard imposed, if the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d at 131. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Rule 8(a) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to give the defendant fair notice of the claim plaintiff is asserting and the factual basis for the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To avoid dismissal, the proposed amended claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In addition, when considering whether to permit the inclusion of additional parties, Rule 20(a)(2) of the Federal Rules of Civil Procedure provides:

Persons . . . may be joined in one action as defendants if:

 (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

 (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Courts have interpreted the requirements of Rule 20(a) liberally so as to promote judicial economy and to allow related claims to be tried within a single proceeding. *See*, *e.g.*, *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1127 (2d Cir.) (Rule 20 "specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice"), *cert. denied*, 400 U.S. 878 (1970); *Zielinski v. Annucci*, 2019 WL 2870337, *7 (N.D.N.Y.) ("[t]he requirements of Rule 20(a) are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding"), *report and recommendation adopted by*, 2019 WL 2869608 (N.D.N.Y. 2019); *Myers v. Dolac*, 2011 WL 4553107, *2 (W.D.N.Y. 2011) (same).

 Of course, where a plaintiff seeks to assert claims beyond the applicable statute of limitations, those untimely claims will be futile unless they relate back to the claims in the original complaint, Fed. R. Civ. P. 15(c); *Soto v. Brooklyn Corr. Fac.*, 80 F.3d 34, 35 (2d Cir. 1996), or equity permits the pleading of the otherwise time-barred claims, *Valentin v. City of Rochester*, 2016 WL 5661729, *9 (W.D.N.Y. 2016). With respect to the relation-back doctrine, Rule 15(c) of the Federal Rules of Civil Procedure permits a plaintiff to amend a complaint in a federal action after the expiration of the limitations period when:

 (A) the law that provides the applicable statute of limitations allows relation back;

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Because the limitations period in this case derives from state law, Rule 15(c)(1)(A) directs the Court to consider both federal and state law and employ whichever affords a "more forgiving" principle of relation back. *See*, *e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *Peralta v. Donnelly*, 2009 WL 2160776, *3 (W.D.N.Y. 2009); *Murphy v. West*, 533 F. Supp. 2d 312, 316 (W.D.N.Y. 2008); *Wilson v. City of New York*, 2006 WL 2528468, *2 (S.D.N.Y. 2006); *see also* Fed. R. Civ. P. 15(c)(1) advisory committee's note to 1991 amendment ("[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim"). Here, plaintiffs rely on federal relation-back principles and do not address New York's relation-back principles.[4]

---

[4] In any event, as relevant to this case, the principles of federal and New York relation-back are materially similar. *See Briggs v. Cnty. of Monroe*, 2016 WL 1296060, *10-11 (W.D.N.Y.), *report and recommendation adopted by*, 215 F. Supp. 3d 213 (2016).

## II.    Application of Rules 15 and 16 to Plaintiff's Motion

Here, the State Defendants oppose plaintiffs' motion to amend solely on the grounds of futility.  (Docket # 152-5).  Specifically, they argue that the proposed claims against Scriven are barred by the three-year statute of limitations applicable to Section 1983 claims and do not relate back to the claims asserted in the original complaint filed in October 2018.  (*Id.* at 7-13).  In reply, plaintiffs maintain that the proposed claims against Scriven do relate back under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure and should be permitted to proceed. (Docket # 153 at 5-10).

### A.    Rule 16

The State Defendants do not oppose amendment on Rule 16 grounds (*see* Docket # 152-5), notwithstanding that the pending motion was filed well after the July 12, 2019 deadline set by the Court at the Rule 16 conference and reflected in its first scheduling order (*see* Docket ## 30, 31).  Although the State Defendants do not address Rule 16 in their papers, let alone explain their decision not to oppose amendment on that basis, there is no question that plaintiffs did not have the information or discovery necessary to support the assertion of a claim against Scriven when the deadline for filing a motion to amend expired.  Indeed, at that time, the State Defendants had already missed their court-ordered deadline for production of mandatory disclosures, and no discovery had yet been exchanged.  Although a court has discretion to deny a party's motion to amend under Rule 16 in the absence of the opposing party's reliance on that grounds, *see*, *e.g.*, *Lekic v. 222 East 8th St. LLC*, 2012 WL 4447625, *2 (E.D.N.Y. 2012) (applying Rule 16(b) standard where not raised by the parties; "[a] further consideration in determining whether leave to amend should be granted are the limitations in Rule 16(b), an issue not raised by either party"), so too does it have discretion to tailor its consideration to the

particular arguments raised by the opposing party, *see, e.g.*, *Will-Burn Recording & Publ'g Co. v. Universal Music Grp. Records*, 2009 WL 1118944, *1 & n.2 (S.D. Ala. 2009) (granting motion to amend pursuant to Rule 15(a) where no party raised a Rule 16(b) challenge; "the other defendants certainly could have insisted on strict compliance with the [s]cheduling [o]rder's deadlines, invoked Rule 16(b), or otherwise protested the untimely inclusion of a new defendants[;] [i]nasmuch as those existing defendant chose not to object, this [c]ourt did not see fit to raise Rule 16 objections *sua sponte* on their behalf"); *see also Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, 2012 WL 3095319, *11 n.6 (S.D.N.Y. 2012) ("because [the party] does not raise this argument in its briefing, the [c]ourt will not address it *sua sponte*").  Here, the Court assumes that the State Defendants, who are represented by experienced counsel, deliberately chose not to raise a Rule 16 argument – where the record clearly shows that plaintiffs did not have sufficient information to move to add Scriven as a defendant in July 2019 and that State Defendants inexcusably delayed for an extraordinarily long period in producing required and requested discovery that revealed his alleged role – and the Court will not *sua sponte* conduct a Rule 16 analysis.[5]

## B.    <u>Rule 15(c)</u>

Rule 16 aside, the State Defendants argue that plaintiffs' motion to add claims against Scriven must be denied under Rule 15(c).  They contend that the claims are untimely under the three-year statute of limitations applicable to Section 1983 claims and cannot be said to relate back to the claims in the original complaint under Rule 15(c)(1)(C).

---

[5] Further support for the assumption that counsel intentionally chose not to contest amendment on Rule 16 grounds, rather than overlooked doing so, is the inclusion in plaintiffs' opening brief of the direct assertion that "[g]ood cause exists for an amendment past the court-ordered deadline under Federal Rule of Civil Procedure 16" and a three and one-half page discussion of Rule 16 "good cause."  (Docket # 144 at 12).  The clear and extensive discussion by plaintiffs of Rule 16 plainly highlighted the issue for defendants.

Pursuant to that rule, an amended complaint adding a new party will be deemed to relate back to the date of the original pleading provided:

(1) the claim must have arisen out of conduct set out in the original pleading;

(2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense;

(3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and ...

(4) the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and ... the original complaint [was] filed within the limitations period.

*Hogan v. Fischer*, 738 F.3d at 517 (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468-69 (2d Cir. 1995)). The parties do not dispute that the claims plaintiffs seek to add against Scriven arise out of the conduct alleged in the original complaint and that the original complaint was filed within the limitations period. Rather, the State Defendants maintain that plaintiffs cannot satisfy the second or third requirements articulated above. (Docket # 152-4 at 7-13).

As to the second requirement, the State Defendants argue that the addition of Scriven as a party defendant would unduly prejudice "all the litigants in this action." (*Id.* at 8). The parties' dispute regarding prejudice centers on whether it should be evaluated solely from the perspective of the party to be added or more broadly from the perspective of all the parties, including those already in the action.[6] In advancing their competing positions, plaintiffs

---

[6] Plaintiffs contend that the existing defendants will be prejudiced because the Attorney General's Office may be conflicted out of representing them if Scriven is added as a party. (Docket # 152-4 at 8-9). The force of this prejudice argument is blunted by the responsibility that the State Defendants' bear for plaintiffs' inability to have identified Scriven as a potential defendant as early as they otherwise could have if the State Defendants had not disregarded their discovery obligations and delayed in producing relevant discovery. In addition, insofar as the State Defendants maintain that plaintiffs improperly noticed Scriven for a non-party deposition while planning to move to add him as a defendant (*id.* at 12), that conduct may be evaluated in considering whether to apply the equitable doctrines of tolling or estoppel discussed *infra. See Bild v. Konig*, 2012 WL 13109964, *8 (E.D.N.Y. 2012)

principally rely on the language of Rule 15(c)(1)(C)(i) (authorizing amendment where, *inter alia*, "the party to be brought in by amendment" received notice such "that it will not be prejudiced in defending on the merits"), while the State Defendants rely on caselaw applying Rule 15(a) and assessing potential prejudice to all parties, *see, e.g.*, *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017). (Docket ## 152-4 at 8-9; 153 at 5-6). I need not, and do not, resolve this dispute because, for the reasons discussed below, I find that plaintiffs cannot establish the third requirement of Rule 15(c)(1)(C).

With respect to the third requirement, the State Defendants maintain that "Scriven did not know, nor should he have known[,] that he was not named a party as a result of a mistake in identity." (Docket # 152-4 at 9). The parties' central dispute as to this requirement is the meaning of the term "mistake concerning the proper party's identity" in Rule 15(c)(1)(C)(ii) as applied to the circumstances giving rise to the motion to add Scriven. Plaintiffs contend that until defendants belatedly produced discovery, well after the statute of limitations had expired, they did not know that Scriven had ordered defendant Thomas O'Connor to make the 911 call for a wellness check based upon the false information that Parole had not heard from Guardiola for three weeks.[7] (Docket # 144 at 20). They further assert that, but for "[p]laintiffs' lack of knowledge regarding [Scriven's] conduct or liability," Scriven would have been named as a defendant in the original complaint. (*Id.*). Critically, plaintiffs continue, although they did not know about Scriven's role at the time, Scriven himself surely knew or should have known that he

("[e]quitable estoppel, therefore, looks at the parties' conduct to determine their relative blameworthiness") (internal quotation and ellipsis omitted).

[7] Plaintiffs eventually learned that Scriven was involved in the decision to check on Guardiola's welfare, and they included allegations relating to Scriven in their First Amended Complaint filed on January 26, 2021. (Docket # 88). Specifically, they alleged that he had told the Binghamton Parole Office Bureau Chief "that the Regional Office was sending someone to check on Ms. Guardiola" after she did not appear for work on October 4. (*Id.* at ¶ 73). Plaintiffs claim that they did not learn until later that he had directed O'Connor to make the 911 call based upon the false information that no one had heard from her in three weeks. (Docket # 153 at 8).

would have been sued if plaintiffs had known about his role, particularly considering the language in the complaint stating, "the circumstances surrounding why Defendant O'Connor would have called in the welfare check are not fully known at this time." (*Id.*; Docket # 1 at ¶ 64).

The State Defendants do not explicitly challenge plaintiffs' assertion that they would have named Scriven in the original complaint had they known of his involvement at that time. (*See* Docket # 152-4). Rather, they argue that *plaintiffs'* lack of knowledge about the factual basis for the claims against him does not establish *Scriven's* knowledge that he would have been sued but for a mistake "concerning the proper party's identity." (*Id.* at 10). In their estimation, Rule 15(c) requires plaintiffs to prove, which they cannot, that Scriven knew or should have known that he should have been sued *instead* of one of the current defendants. (*Id.* at 11 (emphasis in original)). In other words, the State Defendants maintain that, apart from the question of Scriven's knowledge or lack thereof, Rule 15(c) does not apply because plaintiffs seek to *add* Scriven as a defendant rather than to *substitute* him for defendant Thomas O'Connor. (Docket # 152-4 at ¶ 11).

Plaintiffs are correct that some courts have interpreted Rule 15 to permit replacement, but not addition, of defendants. *See*, *e.g.*, *Briggs v. Cnty. of Monroe*, 215 F. Supp. 3d 213, 217 (W.D.N.Y. 2016) ("[a]lthough this Court questions whether the addition of entirely new parties is permitted within the plain language of Rule 15(c)(1)(C), it specifically does not resolve that issue for purposes of this motion); *Salazar v. City of New York*, 2016 WL 879318, *4 (S.D.N.Y. 2016) ("Rule 15(c)(1)(C) governs replacement of defendants, not additions; it does not allow 'relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because plaintiff did not know

their identities'") (quoting *Hogan*, 738 F.3d at 517; *Pikos v. Liberty Maint., Inc.*, 2015 WL 6830670, *3 (E.D.N.Y. 2015) ("[c]ourts in this Circuit have held relation back is only permitted where plaintiff named the wrong party in the original complaint, and not where plaintiff named one but not all of the right defendants"); *Velasquez v. Digit. Page, Inc.*, 2014 WL 2048425, *3 (E.D.N.Y. 2014) ("[w]here a plaintiff has not mistakenly sued the wrong party, a court need not consider what a defendant knows and when the defendant knew it; the threshold requirement for Rule 15(c)(1)(C) – a 'mistake concerning the proper party's identity' – has not been met") (quoting *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d 125, 130-31 (E.D.N.Y. 2014)); *Erdogan v. Nassau Cnty.*, 2014 WL 1236679, *11 (E.D.N.Y. 2014) (same); *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 129-30 ("[here,] [t]he plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable[,] [and] [i]f the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so[;] . . . Rule 15(c)(1)(C) is addressed to the situation where a plaintiff has sued the wrong party, and the right party, reasonably aware of the error, sits on the sidelines while the statute of limitations runs out"). That interpretation finds support in the explicit language of the rule itself. Rule 15(c)(1)(C) – the provision upon which plaintiffs rely in this case – applies where the proposed amendment "*changes* the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added). Subsection (c)(2), by contrast, applies where the United States is "*added* as a defendant by amendment." Fed. R. Civ. P. 15(c)(2) (emphasis added). That distinction suggests that the drafters intended the word "change" to mean something different from the word "add." Neither the Supreme Court nor the Second Circuit has explicitly addressed the issue whether Rule 15(c)(1)(C) is confined to substitution of parties.[8]

---

[8] The Supreme Court's decision in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), upon which plaintiffs rely, involved a motion to replace an originally-named defendant with a new defendant. Nothing in the

And, although this Court has not resolved this dispute previously, and has acknowledged that

other courts have interpreted Rule 15(c)(1)(C) to permit addition of defendants, *see Briggs v.*

*Cnty. of Monroe*, 2016 WL 1296060 at *6, it takes the opportunity here to observe that the

linguistic support for the narrower construction appears strong.[9]

Whether or not Rule 15(c)(1)(C) allows for addition of defendants, it still applies

only to "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

Ample caselaw in this Circuit supports the construction of that provision to preclude relation

back for amendments that add new defendants who were not named originally because the

plaintiff did not know their identities. As this Court has previously observed, that authority is

supported by several Second Circuit cases, including *Barrow v. Wethersfield Police Dep't*, 66

F.3d 466, 470 (2d Cir. 1995) (Rule 15(c) did not permit addition of new defendants whose

identities plaintiff lacked at the outset because "the new names were added not to correct a

mistake but to correct a lack of knowledge"), and *Hogan v. Fischer*, 738 F.3d 509, 517 & n.2 (2d

---

decision suggests that the Supreme Court would read Rule 15(c)(1)(C)(ii) more broadly. That said, I do not
expressly resolve the question whether Rule 15(c)(1)(C) applies only to substitution of defendants.

[9] I disagree with courts that have concluded that it is settled law in this Circuit that Rule 15(c)(1)(C)(ii)
applies only to substitution and not addition of new defendants. *See, e.g.*, *Pierre v. Cnty. of Nassau*, 2022 WL
2872651, *6 (E.D.N.Y. 2022) ("courts in this Circuit do not apply Rule 15(c) to permit relation back where a
plaintiff seeks to add an additional party as a defendant after the statute of limitations has expired"). That
conclusion ignores decisions to the contrary, *see, e.g.*, *Abdell v. City of New York*, 759 F. Supp. 2d 450, 459
(S.D.N.Y. 2010) (permitting addition of defendant under Rule 15(c) on the grounds that "the *Krupski* decision
permits relation back under Rule 15(c) where plaintiffs lacked knowledge as to liability"). Although there is likely
to be little difference in this Circuit in the outcome of a motion to amend to add a defendant after the expiration of
the limitations period where a court applies the "no additions, only substitutions" strict construction of Rule
15(c)(1)(C) to preclude relation back where plaintiffs lacked knowledge as to liability, as opposed to those courts
which have not foreclosed the possibility of relation back in the absence of substitution, there is one scenario this
Court can envision in which the distinction may lead to different results. Consider a case in which the timely-filed
original complaint sues Defendant A for excessive force for kicking and punching the plaintiff, and the plaintiff
learns after the expiration of the limitations period that although Defendant A kicked the plaintiff, it was
Defendant B who punched the plaintiff. Under a strict construction that limits the rule to substitutions of parties, a
motion to amend to add Defendant B would likely be denied. By contrast, a court which has not foreclosed relation
back in the absence of substitution may arrive at a different outcome if the plaintiff can show that Defendant B knew
at the time of the original complaint that he was the defendant who had kicked the plaintiff and that plaintiff was
mistaken in attributing that conduct to Defendant A. Under that scenario, the court may allow plaintiff to name
Defendant B as an additional defendant alongside Defendant A.

Cir. 2013) ("[t]his Circuit has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities"). *See Briggs*, 2016 WL 1296060 at *6. Significantly, the Second Circuit recently reaffirmed the continuing vitality of *Barrow* and rejected the contention that the Supreme Court had implicitly overruled it in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) ("*Krupski* did not abrogate *Barrow*, which remains the law of this Circuit"). *See also Sewell v. Bernardin*, 795 F.3d 337, 342 (2d Cir. 2015) ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities") (quoting *Barrow*, 66 F.3d at 470).

In *Krupski*, the plaintiff mistakenly sued the wrong corporation and sought to correct that mistake by substituting the correct corporation as defendant. *Krupski*, 560 U.S. at 543-44. The Supreme Court determined that the plaintiff's proposed amendment related back to the original pleading, despite the fact that the plaintiff had information regarding the proper defendant's identity prior to the expiration of the statute of limitations. *Id.* at 548-49. According to the Court, the proper inquiry is whether the correct defendant knew or should have known that it would have been sued by the plaintiff but for her mistake as to its identity, and "it would be error to conflate knowledge of a party's existence with the absence of mistake." *Id.* As the Court reasoned, "a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression." *Id.* at 549. Elaborating on the meaning of a mistake as to "role" or "status," the Court explained:

> That a plaintiff knows of a party's existence does not preclude her
> from making a mistake with respect to that party's identity. A

> plaintiff may know that a prospective defendant – call him party A – exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties.

*Id.*

As several district courts have noted, the plaintiff in *Krupski* was mistaken about the identity of the party who "owned, operated, managed, supervised and controlled the ship on which she was injured" (*see Krupski*, 560 U.S. at 554) and sued the wrong corporation instead of the correct one based on that mistake; the Court in *Krupski* did not address the issue before the court in *Barrow* – whether lack of knowledge may constitute a mistake under Rule 15. *See, e.g., United States ex rel. Aryai v. Skanska*, 2019 WL 1258938, *7 (S.D.N.Y. 2019) ("*Krupski* requires the Court to assess the existence of a 'mistake' from the defendant's perspective . . . , and *Ceara* confirms that a mere lack of knowledge of a defendant's identity or conduct does not constitute such a mistake"); *Bender v. City of New York*, 2015 WL 524283, *4 (S.D.N.Y. 2015) (distinguishing *Krupski*, in which the "plaintiff mistakenly sued the wrong entity based on a 'misunderstanding' of the two known entities' 'status or liability,'" from *Barrow*, in which the plaintiff simply lacked knowledge of the defendants' identities); *Vasconcellos v. City of New York*, 2014 WL 4961441, *6-7 (S.D.N.Y. 2014) ("[a] superficial glance at *Krupski's* language might call *Barrow's* vitality into question[,] . . . [but] [n]othing in *Krupski* upsets the commonsense conclusion that ignorance and error are different mental states"); *Anderson v. City of Mount Vernon*, 2014 WL 1877092, *4 (S.D.N.Y. 2014) ("unlike the plaintiff in *Krupski*, [p]laintiff here did not make a mistake between two known alternative defendants based on a

misunderstanding of their status or liability[;] [r]ather, like the plaintiff in *Barrow*, [p]laintiff's failure to name [the proposed defendant] in the [previous] [c]omplaints was due to his lack of knowledge regarding the [defendant's] identity"); *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 130 ("the starting point for *Krupski* was a suit against the wrong party, and all of its discussion of knowledge must be seen in that context"); *Dominguez v. City of New York*, 2010 WL 3419677, *3 (E.D.N.Y. 2010) ("*Krupski* merely picks up where *Barrow* left off[;] *Barrow* asked whether a mistake had been committed; *Krupski* assumes the presence of a mistake and asks whether it is covered by Rule 15(c)(1)(C)(ii)"). Some of these cases involved "John Doe" pleadings, while some, like *Anderson*[10] and *In re Vitamin C Antitrust Litigation*, did not.

In this case, plaintiffs' original complaint reveals their conceded ignorance at the time it was filed of the identities and roles others may have had in the 911 call made by defendant Thomas O'Connor:

> The circumstances surrounding why Defendant O'Connor would have called in this welfare check are not fully known at this time. However, Ms. Guardiola was being harassed and bullied by employees in the Rochester office, which led her to request a transfer, and this call, upon information and belief, was part of this pattern of harassment.

(Docket # 1 at ¶ 64).[11] Based upon information that they later learned through discovery that Scriven directed O'Connor to make the 911 call based upon information that both Scriven and O'Connor knew to be false, plaintiffs now seek to add Scriven as a defendant. They do not seek to replace O'Connor with Scriven as the potentially liable party; rather, they seek to impose

---

[10] The original complaint in *Anderson* involved a John Doe defendant. *See Anderson v. City of Mount Vernon*, 2014 WL 1877092 at *1. However, the John Doe defendant was identified and substituted. (*Id.*). The plaintiff then sought leave to amend to add an additional defendant. (*Id.*).

[11] Undoubtedly, plaintiffs understood how important discovery would be to ascertaining the facts about the identities, involvement, and potential liability of other individuals, if any, in the welfare check. In this respect, the State Defendants had a clear advantage over plaintiffs: not only did the defendants possess many of the relevant documents, but the individual with the claims against them had died.

liability against each based upon the role each played in the events leading up to Guardiola's death: Scriven's direction to O'Connor to make a 911 welfare call on the false grounds that Guardiola had not been heard from in three weeks, and O'Connor's execution of that direction knowing that the information he conveyed about Guardiola being missing from work for three weeks was false.

Plaintiffs' proposed addition of Scriven as a new defendant does not seek to cure any mistake of identity. In fact, there is nothing about the material allegations against defendant O'Connor that the proposed amended complaint seeks to modify; the essential factual allegations against him remain the same. Rather, the proposed amended complaint seeks to cure plaintiffs' ignorance of Scriven's potential culpability. Under these circumstances, I conclude that the claims against Scriven do not relate back to the original complaint. *See*, *e.g.*, *Liverpool v. Davis*, 442 F. Supp. 3d 714, 726 (S.D.N.Y. 2020) (claims against new defendant do not relate back where original complaint "did not make any allegations concerning a misidentified individual who was actually [the new defendant]" and did not seek to "substitute [him] in place of a previously named defendant upon realizing that there had been a mistake of identity"; "the relation-back provision of Rule 15(c) does not apply in such circumstances"); *Harris v. City of New York*, 2016 WL 427908, *4 (S.D.N.Y. 2016) (proposed amendment did not relate back where plaintiff sought to add two additional officers who participated in his arrest whose identities plaintiff did not originally know); *Gonzalez v. City of New York*, 2015 WL 6873451, *3 (S.D.N.Y. 2015) (amended complaint seeking to add defendants did not relate back where plaintiff failed to name them because he did not know their identities); *Pikos v. Liberty Maint., Inc.*, 2015 WL 6830670 at *3-4 ("relation back under Second Circuit precedent" does not permit amending to add party that "shares liability"; "here, [p]laintiffs do not claim [original defendant]

was the 'wrong party' or argue [that it] does not share liability; rather, they attempt to add [additional defendants] while maintaining [original defendant] as a defendant too"); *Hahn v. Off. & Pro. Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 384-86 (S.D.N.Y. 2015) (finding no mistake under Rule 15(c)(1)(C)(ii) where "[t]he plaintiff has sued [what he believes is] the right defendant, and simply neglected to sue another defendant who might also be liable") (alteration in original; internal quotation omitted); *Erdogan v. Nassau Cnty.*, 2014 WL 1236679 at *12 (denying motion to amend to add existing defendant's supervisors as additional defendants because amendment does not relate back under Rule 15(c)(1)(C)(ii); lack of knowledge of additional defendants' roles does not constitute "mistake" within meaning of Rule and to determine otherwise would "essentially eviscerate[] the statute of limitations requirement"); *Velasquez v. Digit. Page, Inc.*, 2014 WL 2048425 at *4 ("by acknowledging that they learned the identities of these corporate [proposed defendants] through the discovery process and upon their own investigation, [p]laintiffs essentially concede that they sued the right defendants, and simply neglected to sue other defendants which might also be liable[;] . . . [a]ccordingly, the [c]ourt finds that [p]laintiffs' lack of knowledge as to the identity of the proposed defendants does not satisfy [Rule 15(c)(1)(C)(ii)]") (internal quotations and alterations omitted); *Anderson*, 2014 WL 1877092 at *4 ("[p]laintiff's failure to name [police sergeant] in the original and First Amended Complaints was due to his lack of knowledge regarding the [s]ergeant's identity[;] [t]hus, his proposed amendment naming [police sergeant] as a defendant after the statute of limitations had run does not correct a mistake in the original complaint, but instead supplies information plaintiff lacked at the outset") (internal quotation omitted); *In re Vitamin C Antitrust Litig.*, 995 F. Supp. 2d at 130 (amended complaint adding existing defendant's minority shareholder as new defendant did not relate back under Rule 15(c)(1)(C); "the most that plaintiffs can say is that they

were unaware of [shareholder's] participation in the alleged cartel when they filed their first consolidated amended complaint . . . [;] [i]n the Second Circuit, however, lack of knowledge does not constitute a 'mistake' for relation back purposes").  As the court in *In re Vitamin C Antitrust Litigation* aptly observed:

> Adopting plaintiffs' expansive theory of relation back would gut the policies underlying periods of limitation, because filing a complaint would effectively become an indefinite toll of the statute of limitations against any defendants who learn of the action and who might also be liable for the conduct alleged, under the theory that those defendants "should have known" that the plaintiff had made a "mistake" in not suing them as well.  Relation-back would swallow the general principles of statutes of limitations.

995 F. Supp. 2d at 131.


## III.  <u>Equitable Tolling and Equitable Estoppel</u>

Although this Court finds that plaintiffs' proposed claims against Scriven do not relate back to the original complaint within the meaning of Rule 15(c)(1)(C)(ii), that determination does not end the futility analysis.  While the claims may not avoid a limitations bar through resort to the relation-back doctrine, it is possible that they may through application of the equitable doctrines of tolling and/or estoppel.

Because the statute of limitations for Section 1983 claims is borrowed from state law, the tolling of the statute of limitations for such claims is "generally governed by state tolling provisions."  *Deraffele v. City of New Rochelle*, 2016 WL 1274590, *11 (S.D.N.Y. 2016). Nevertheless, "courts may apply the federal equitable tolling standard 'as a matter of fairness.'" *Id.* (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)); *see also Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (applying federal doctrine of equitable tolling to plaintiff's Section 1983 claim), *cert. denied*, 547 U.S. 1101 (2006); *Robie v. Obst*, 2015 WL

4208639, *3 (W.D.N.Y. 2015) ("federal courts use state tolling provisions when deciding §1983 claims because of the close relationship between a state's statute of limitations and its tolling provisions[;] . . . [n]onetheless, a plaintiff may still toll the statute of limitations by asserting equitable estoppel or equitable tolling, as 'it is well settled that the federal courts have the power to toll statutes of limitations borrowed from state law'") (quoting *Meyer v. Frank*, 550 F.2d 726, 729 (2d Cir.), *cert. denied*, 434 U.S. 830 (1977)); *Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 235 (E.D.N.Y. 2015) ("it is well-settled that federal courts should borrow the forum state's tolling rules[;] . . . [a]s the Second Circuit has explained, New York courts have adopted the same equitable tolling doctrine that exists under federal law") (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002), *cert. denied*, 538 U.S. 922 (2003), and *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983)); *Moses v. Westchester Cnty. Dep't of Corr.*, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) ("[f]ederal courts deciding section 1983 actions generally apply the tolling provisions of the state in which the action is brought, . . . unless doing so would be contrary to the federal policy goals of compensation of persons injured by a deprivation of federal rights and the prevention of abuses of power by those acting under color of state law underlying section 1983") (internal citations and quotations omitted).

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d at 12. The doctrine of equitable tolling is applied "only in rare and exceptional circumstances, where . . . extraordinary circumstances prevented a party from timely performing a required act." *Walker v. Jastremski*, 430 F.3d at 564 (internal quotations omitted); *see Rene v. Jablonski*, 2009 WL 2524865, *6 (E.D.N.Y. 2009) (statute of limitations deadlines may " be equitably tolled in 'rare and exceptional circumstance[s],' in which a party is 'prevented in some

extraordinary way from exercising [her] rights'") (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840 (2000), and *Johnson*, 86 F.3d at 12).  Application of equitable tolling considerations is "fact-specific" and "does not lend itself to bright-line rules," *Barton-Nachamie v. United States*, 2005 WL 356811, *1 (S.D.N.Y. 2005), and a party seeking equitable tolling must establish that she has "acted with reasonable diligence during the time period she seeks to have tolled," *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

The doctrine of equitable estoppel may preclude a defendant from asserting the statute of limitations as a defense "in cases where the plaintiff knew of the existence of [her] cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing [her] lawsuit." *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir. 1985). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to [her] detriment." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (citing *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984)).  Equitable estoppel may be justified even in the absence of fraud or an intent to deceive so long as the defendants' misrepresentations or misconduct misled the plaintiff. *Bild v. Konig*, 2012 WL 13109964 at *7.  The plaintiff must, however, demonstrate that she brought her claim "within a reasonable time after the facts giving rise to the estoppel have ceased to be operational." *Buttry v. Gen. Signal Corp.*, 68 F.3d at 1494.  "Whether equitable estoppel applies in a given case is ultimately a question of fact." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (applying equitable estoppel doctrine).

The facts in the record before the Court in this case raise questions whether equity should be exercised to permit plaintiffs to assert claims against Scriven that would otherwise be barred by the three-year statute of limitations. As the procedural summary *supra* reflects, the State Defendants repeatedly ignored court-ordered deadlines and mutually agreed-upon, court-approved extensions relating to the production of mandatory disclosures and responses to plaintiffs' requests for production of documents, interrogatories, and supplemental interrogatories. Their inexcusable conduct resulted in substantial delay in plaintiffs' receipt of evidence relevant to their claims against Scriven. For example, the State Defendants did not produce initial disclosures until September 30, 2020 – four days before the expiration of the statute of limitations and nearly seventeen months after the court-ordered deadline – notwithstanding numerous communications from plaintiffs' counsel during that period seeking their production and threatening a motion to compel. The State Defendants similarly delayed for more than a year in serving responses to plaintiffs' First Set of Interrogatories. Significantly, the answers that were served failed to identify Scriven as one of the individuals who had been in contact with Guardiola about her medical leave and failed to identify him as one of the individuals who had reviewed her medical leave paperwork. Remarkably, neither inaccuracy appears to have been corrected to date. The State Defendants' responses to plaintiffs' Supplemental Interrogatories were served in September 2021, again well after defendants had agreed to do so and only after this Court had granted plaintiffs' motion to compel and imposed sanctions. In addition, the State Defendants delayed until June 2022 in producing the voicemail message from Guardiola to another parole officer on October 3, 2017, which refers to a conversation she had with Scriven about her return to work. On this record, the plaintiffs should

have the opportunity to request equitable relief from the limitations bar should Scriven raise the statute of limitations as an affirmative defense.

Because this Court cannot say with certainty on the record before it that the limitations period has not been tolled or that the State Defendants' conduct in defending this action does not estop them from relying on the limitations bar, I grant plaintiffs' motion to amend to assert the proposed claims against Scriven. Once served, Scriven may decide whether to assert the statute of limitations in a responsive pleading or motion to dismiss; if he does, plaintiffs likewise may choose whether to invoke either or both of the equitable doctrines, and the Court may then address the issues after full briefing and on a fully-developed record. *See Bell v. Saunders*, 2021 WL 1699860, *4 (N.D.N.Y. 2021) ("[n]or does the [c]ourt reach the issue, which [p]laintiff raised in his reply, of whether the statute of limitations has been tolled . . . ; it has not been briefed fully and should be addressed by the parties in interest first"); *Tatem v. Perelmuter*, 2021 WL 165088, *8 (D. Conn. 2021) ("arguments over the statute of limitations, especially as they involve the defense of laches or equitable tolling, are better addressed at a later stage of the case, as a court would only deny a motion to amend if it is clear on the face of the pleadings that the claims would be barred by the statute of limitations, and if the issue would not need to be more fully briefed") (internal quotations omitted).

IV.     **Plaintiffs' Other Proposed Amendments**

As noted *supra*, plaintiffs also reassert in the proposed Second Amended Complaint a cause of action that was dismissed by Judge Larimer, the Section 1983 cause of action based upon alleged inference with familial relationships. They may not evade the dismissal order by reasserting the claim in a subsequent pleading. Thus, plaintiffs' proposed

Fourth Cause of Action may not be included, and leave to amend to assert it is denied.[12]  In the absence of objection by any of the defendants, or any discernible reason not to grant plaintiffs permission to do so, they may amend their complaint to add the new and modified factual allegations (*id.* at ¶¶ 3, 5-7, 12, 29, 43-49, 57-66, 76-84, 87, 101) and to remove references to and allegations against previously-named defendants Grand Atlas Property Management, LLC, Morgan Communities Management, LLC, Pinnacle North I LLC, and John and Jane Doe #1 and #2.

## <u>CONCLUSION</u>

For the reasons set forth above, plaintiffs' motion to amend the complaint and to add Grant Scriven as a defendant **(Docket # 142)** is **GRANTED in part and DENIED in part**. Plaintiffs shall file and serve an amended complaint consistent with this Decision and Order on or before **January 6, 2023**.  Defendants shall answer or otherwise respond to the amended complaint in accordance with the provisions of Rule 12 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      December 13, 2022

---

[12] Plaintiffs may include the Second Cause of Action because Judge Larimer expressly permitted plaintiffs leave to replead it within twenty days of his decision (Docket # 82), and they did so (Docket # 88).  The Third Cause of Action, which asserts a *Monell* claim against the City of Canandaigua, may not be interpreted to assert theories of liability based on ratification or acquiescence since Judge Larimer rejected those theories, and plaintiffs did not amend their original allegations in accordance with his directions.