**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------- X

ALYSA OCASIO, ANDREW OCASIO, and JAHAIRA
HOLDER, as Administratrix of the Estate of Sandy Guardiola,

                                        Plaintiffs,

        - against -

The CITY OF CANANDAIGUA, a municipal entity;
Canandaigua Police Chief STEPHEN HEDWORTH, in
his individual and official capacities; Canandaigua Police
Sergeant SCOTT KADIEN, in his individual capacity;
DOCCS Regional Director GRANT SCRIVEN, in his
individual capacity; DOCCS Parole Chief DAWN
ANDERSON, in her individual capacity; DOCCS Senior
Parole Officer THOMAS O'CONNOR, in his individual
capacity; DOCCS Senior Parole Officer BETH HART-
BADER, in her individual capacity,

                                        Defendants.

-------------------------------------------------------------------------- X

**6:18-cv-06712**
**(DGL)(MWP)**


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT GRANT SCRIVEN'S MOTION TO DISMISS THE SECOND AMENDED**
**COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**



BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 1

PROCEDURAL HISTORY...................................................................................... 3

LEGAL STANDARD.............................................................................................. 5

ARGUMENT .......................................................................................................... 6

I.     PLAINTIFFS ARE NOT REQUIRED TO PLEAD THE DOCTRINES OF
       EQUITABLE TOLLING AND EQUITABLE ESTOPPEL ............................ 6

II.    DEFENDANT SCRIVEN'S STATUTE OF LIMITATIONS ARGUMENT
       SHOULD BE DECIDED AT SUMMARY JUDGMENT ................................ 6

III.   CLAIMS AGAINST DEFENDANT SCRIVEN SHOULD BE
       EQUITABLY TOLLED DUE TO THE STATE'S DILATORY
       CONDUCT .................................................................................................. 10

IV.    DEFENDANT SCRIVEN SHOULD BE EQUITABLY ESTOPPED
       FROM CLAIMING THE STATUTE OF LIMITATIONS HAS PASSED
       BECAUSE OF THE STATE DEFENDANTS' MISREPRESENTATIONS ................. 13

V.     THE LAW OF THE CASE PRECLUDES DEFENDANT SCRIVEN
       FROM LITIGATING ISSUES ALREADY DECIDED BY THIS COURT .................. 14

VI.    PLAINTIFFS' NEW YORK STATE CONSTITUTIONAL CLAIMS
       MUST SURVIVE ......................................................................................... 16

CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007) ................................................................ 6

*Adams v. Crystal City Mariott Hotel*, 2004 U.S. Dist. LEXIS 5819 (S.D.N.Y. Apr. 5, 2004) ...... 5

*BPP Ill., LLC v. Royal Bank of Scot. Group PLC*, 603 Fed. Appx. 57 (2d Cir. 2015)................... 9

*Brown v. State*, 89 N.Y.2d 172 (1996)...................................................................................... 16

*Chen v. Jenna Lane, Inc.*, 30 F.Supp.2d 622 (S.D.N.Y.1998)...................................................... 4

*Festa v. Local 3, Int'l Brotherhood of Elec. Workers*, 905 F.2d 35 (2d Cir. 1990) ...................... 5

*Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486 (2d Cir. 2018)........................................ 6

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999)............................................................. 7

*Johnson v. Nyack Hosp.*, 86 F.3d 8 (2d Cir. 1996) ..................................................................... 10

*Kattu v. Metro Petroleum, Inc.*, No. 12 Civ. 54-A (RJA), 2013 U.S. Dist. LEXIS 110413 (W.D.N.Y. Aug. 6, 2013).................................................................................................. 7

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001)...................... 13

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ............................................ 5

*Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310 (W.D.N.Y. 2021) ..................................... 15

*Ocasio v. City of Canandaigua*, No. 18-CV-6712DGL, 2022 U.S. Dist. LEXIS 226031 (W.D.N.Y. Dec. 13, 2022)............................................................................................................ passim

*Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120 (E.D.N.Y. 2013).......................... 10

*Quirk v. Katz*, No. 20-cv-9910 (LAK), 2022 U.S. Dist. LEXIS 165373 (S.D.N.Y. Sep. 13, 2022) ........................................................................................................................................... 6

*Rene v. Jablonski*, 2009 U.S. Dist. LEXIS 72533, 2009 WL 2524865 (E.D.N.Y. 2009) ........... 11

*Robie v. Obst*, No. 14 Civ. 57S (WMS), 2015 U.S. Dist. LEXIS 89991 (W.D.N.Y. July 10, 2015) ........................................................................................................................................... 9

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990).................................................................. 16

*Schwebel v. Crandall*, 967 F.3d 96 (2d Cir. 2020) .................................................................... 13

*Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462 (S.D.N.Y. 2016) ...................................... 5

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009)....................................................... 6

*Syfert v. City of Rome*, 768 F. App'x 66, 68 (2d Cir. 2019) ........................................... 9

*Toto, Inc. v. Sony Music Entm't*, No. 12 Civ. 1434, 2012 U.S. Dist. LEXIS175389 (S.D.N.Y. Dec. 11, 2012) .......................................................................................................... 9

*U.S. v. Northern Trust Co.*, 372 F.3d 886 (7th Cir. 2004) ............................................. 7

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991) .................................................... 15

*Walker v. Jastremski*, 430 F.3d 560 (2d Cir. 2005) ...................................................... 11

*Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725 (S.D.N.Y. 2020) .................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................. 1, 5

## PRELIMINARY STATEMENT

Sandy Guardiola, a parole officer with the New York State Department of Corrections and Community Supervision was shot and killed by Canandaigua Police Sergeant, Defendant Scott Kadien, after Defendant Grant Scriven, the Regional Director of DOCCS's Western Region and Ms. Guardiola's supervisor, called for a retaliatory wellness check after Ms. Guardiola had complained of discrimination and a hostile work environment.

Facts implicating Defendant Grant Scriven as the sole source of information that Ms. Guardiola had not been heard from in three weeks used to justify the decision for the retaliatory wellness check were withheld from Plaintiffs until well after the statute of limitations had expired. Defendant Scriven now files a motion to dismiss almost solely on the basis of timeliness. Defendant Scriven makes no argument as to the sufficiency of Plaintiffs' allegations against him. As argued below, Defendant Scriven's motion pursuant to Fed. R. Civ. P. 12(b)(6) is not the appropriate procedural vehicle to assert his defense of untimeliness. In any event, claims against Defendant Scriven should be equitably tolled due to the State's and Defendant Scriven's dilatory conduct and Defendant Scriven should be equitably estopped from challenging the timeliness of the claims based on the State's material representations. For the reasons argued herein, Defendant Scriven's motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiffs' previous filings contain a full account of the factual history of this case. Briefly Sandy Guardiola, a 48-year-old mother of two, was shot and killed by Canandaigua Police Sergeant Scott Kadien while in her bed on October 4, 2017. (Second Amended Complaint, hereinafter "SAC", ¶¶ 10, 19, 33). Ms. Guardiola was a Parole Officer employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). (*Id.* ¶ 39). After

moving to Canandaigua, New York, in or about May 2017, she began working with DOCCS in Rochester where she used her degree in social work to work with parolees with serious mental health issues. (*Id*. ¶¶ 39–41). Almost immediately, Ms. Guardiola faced race-based harassment from colleagues and supervisors. (*Id*. ¶¶ 42–43). She complained of this treatment to her supervisors and was retaliated against including, but not limited to, being issued counseling memo (*Id*. ¶ 44–47.) Defendant Scriven was kept informed of Ms. Guardiola's complaints of racial discrimination as well as the retaliatory discipline (*Id*. ¶¶ 48–49).

In or around July 2017, Ms. Guardiola requested and was approved for a transfer to the Binghamton Office where she was set to begin on September 7, 2017. (*Id*. ¶¶ 50–51). On September 4, 2017, Ms. Guardiola was involved in a car accident. (*Id*. ¶ 53). As a result, she was granted medical leave and remained on leave through, and including, at least October 4, 2017. (*Id*. ¶ 55). Her supervisors remained aware of her leave and were in frequent contact with her. (*Id*. ¶ 57–60). On October 3, 2017 Defendant Scriven asked Ms. Guardiola to send Defendant Scriven's administrative assistant, Rita Spaulding, a doctor's letter authorizing her to return to work once she received it. (*Id*. ¶ 65). She was unable to receive the signed paperwork until 4:30pm on October 3, 2017 and immediately emailed it to Ms. Spaulding. (*Id*. ¶¶ 68-71). On October 4, 2017, Ms. Guardiola spoke to the Binghamton office, remained home, and went back to sleep. (*Id*. ¶ 74). Ms. Guardiola, who was not able to receive messages sent to her DOCCS email, was not informed by DOCCS personnel that she was cleared to return to work. (*Id*. ¶ 77).

Defendant Scriven directed Defendant O'Connor, a Senior Parole Officer from the Rochester Office of DOCCS, not the Binghamton Office where Ms. Guardiola had been transferred, to conduct the wellness check and concocted a false story with Defendant O'Connor that Ms. Guardiola had not been heard from for three weeks, even though he had spoken to her

just days before.  (*Id*. ¶ 71, 82). At approximately 4:00 p.m., in furtherance of his agreement with Defendant Scriven to assert a knowingly false set of facts, Defendant O'Connor arrived at 20 North Shore Drive to conduct a welfare check. (*Id*. ¶ 83–84). Defendant O'Connor was taken to the apartment complex's leasing office. (*Id*. ¶ 85). At approximately 4:17 p.m., while in the apartment complex's leasing office, Defendant O'Connor called 911 requesting a welfare check, falsely claiming that Ms. Guardiola had been missing from work for three weeks. (*Id*. ¶ 86). Defendant O'Connor did not attempt to contact Plaintiffs Alysa or Andrew Ocasio, Ms. Guardiola's listed emergency contacts, before calling 911. (*Id*. ¶ 88).

Due, in part, to the false representations made by the State Defendants, Defendant Kadien entered Ms. Guardiola's locked apartment without a warrant. (*Id*. at ¶¶ 96-97). He opened her closed bedroom door and then shot and killed her while she was still in her bed. (*Id*. at ¶¶ 116-117).

## PROCEDURAL HISTORY

On October 4, 2018, one year after Ms. Guardiola's death, Plaintiffs Alysa and Andrew Ocasio, who are Ms. Guardiola's children, and Jahaira Holder, the Administratrix of the Estate of Ms. Guardiola, filed a Complaint alleging numerous federal and state law claims against, *inter alia*, the State Defendants. (Compl., Dkt. No. 1). The State Defendants answered on January 15, 2019. (Dkt. No. 26). In the Fall of 2019, all Defendants, except the State Defendants, moved for judgment on the pleadings or moved to dismiss the Complaint. (Dkt. Nos. 39, 42–44, 45). Plaintiffs reached a settlement with the defendants from Ms. Guardiola's apartment complex. (Dkt. Nos. 71, 83.) On January 13, 2021, the Court granted in part and denied in part Defendant Kadien and Defendants City of Canandaigua and Hedworth's motions, granting Plaintiffs leave to replead their *Monell* claims based on ratification or acquiescence theories and conspiracy claim. *Ocasio v. City*

*of Canandaigua*, 513 F. Supp. 3d 310, 328 (W.D.N.Y. 2021). On January 26, 2021, Plaintiffs filed the First Amended Complaint ("FAC"). *See* Dkt. No 88. The State Defendants did not file an answer or otherwise move in response to the FAC.[1]

On February 12, 2019, the Court issued an order mandating that the parties serve disclosures pursuant to Fed. R. Civ. P. 26(b)(1) by May 1, 2019. (Dkt. No. 30). Despite the Court's order and following at least six requests and reminders from Plaintiffs over a year and a half of litigation, the State Defendants finally produced their initial disclosures on September 30, 2020—four days before the expiration of the statute of limitations and nearly seventeen months after the court-ordered deadline. (*See generally* Pls' MOL in support of their Motion to Compel at Dkt No. 92-7; Droubi Decl. at 92-1). It took the State Defendants until April 27, 2021, and only after a motion to compel, for Defendants to respond to a November 12, 2020 deficiency letter in defiance of a November 9, 2020 Court Order. This all occurred well after the statute of limitations had passed.

On June 3, 2021, Plaintiffs were forced to file a second motion to compel after the State Defendants failed to meet and confer with respect to scheduling depositions. The Court granted both Motions to Compel and awarded sanctions. (Dkt. Nos. 93 and 118, granted by Dkt. Nos. 110 and 124). At the deposition of Defendant Thomas O'Connor on March 17, 2022, Defendant O'Connor testified that Grant Scriven had directed him to make the call to 911 for a wellness check on Ms. Guardiola based on false information that no one had heard from her in three weeks and that it was Scriven who was the sole source of that false statement. (*See* Dkt No. 143, Arena Aff., Exhibit 10 at 28:13-22).

---

[1] As a result, the State Defendants have already admitted the facts as provided in the First Amended Complaint, and may be precluded from making the present motion. *Chen v. Jenna Lane, Inc.*, 30 F.Supp.2d 622, 623 (S.D.N.Y.1998) ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal citations omitted).

On July 18, 2022, Plaintiffs moved for leave to file a second amended complaint. (Dkt. Nos. 142–144, 148.) The Court granted Plaintiffs' motion in part. (*See* Dkt. No. 165). On December 23, 2022, Plaintiffs filed the SAC, which added Defendant Grant Scriven as a party. (Dkt. No. 167).

The operative claims against the Defendant Scriven include (1) violations of the U.S. Constitution brought pursuant to 42 U.S.C. § 1983, (2) conspiracy to violate the Fourth and Fourteenth Amendments brought pursuant to 42 U.S.C. § 1983, (3) violations of the New York State Constitution, (4) wrongful death, and (5) pain and suffering. *See* SAC at 21–29.

## **LEGAL STANDARD**

"Rule 12(b) of the Federal Rules of Civil Procedure does not enumerate failure to comply with the statute of limitations as a ground for dismissal." *Adams v. Crystal City Mariott Hotel*, 2004 U.S. Dist. LEXIS 5819, at \*6 (S.D.N.Y. Apr. 5, 2004). "The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3, Int'l Brotherhood of Elec. Workers*, 905 F.2d 35, 37 (2d Cir. 1990). A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is not appropriate to assert a defense of untimeliness where Plaintiffs have not alleged facts regarding the timeliness of filing the claim. *Shak v. JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 474 (S.D.N.Y. 2016) ("Dismissing claims on statute of limitations grounds at the complaint stage 'is appropriate only if a complaint clearly shows the claim is out of time.'").

## ARGUMENT

**I.    PLAINTIFFS ARE NOT REQUIRED TO PLEAD THE DOCTRINES OF EQUITABLE TOLLING AND EQUITABLE ESTOPPEL**

As an initial matter, Defendant Scriven's motion misrepresents the burden of persuasion on a motion to dismiss. Defendant Scriven claims that "plaintiffs have failed to allege any actions or inactions by Director Scriven that were deceptive or fraudulent." Def. MOL at 7. Defendant Scriven's argument fails because it improperly places the burden on the Plaintiffs to plead facts in their complaint that defeat his affirmative defense. "The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 639-40 (2d Cir. 2007) (finding that a trial court's *sua sponte* dismissal of an otherwise untimely complaint for failure to allege facts in support of equitable tolling was reversible error); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009); *Quirk v. Katz*, No. 20-cv-9910 (LAK), 2022 U.S. Dist. LEXIS 165373, at *17 (S.D.N.Y. Sep. 13, 2022) ("A complaint need not 'anticipate potential affirmative defenses' or 'affirmatively plead facts in avoidance of such defenses.'); *Wei Su v. Sotheby's, Inc.*, 490 F. Supp. 3d 725, 735 n.9 (S.D.N.Y. 2020). The statute of limitations is an affirmative defense and Defendant Scriven bears the burden of proving that the defense applies. *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 490 (2d Cir. 2018).

**II.    DEFENDANT SCRIVEN'S STATUTE OF LIMITATIONS ARGUMENT SHOULD BE DECIDED AT SUMMARY JUDGMENT**

Defendant Scriven's statute of limitations argument should not be addressed on a motion to dismiss, but at summary judgment. "Determining a statute of limitations defense ordinarily requires a consideration of the merit of both parties' claims and defenses." *Kattu v. Metro*

*Petroleum, Inc.*, No. 12 Civ. 54-A (RJA), 2013 U.S. Dist. LEXIS 110413, at *12 (W.D.N.Y. Aug. 6, 2013) (quotation marks and citation omitted). "Application of equitable tolling considerations is fact specific and does not lend itself to bright-line rules." *Ocasio v. City of Canandaigua*, No. 18-CV-6712DGL, 2022 U.S. Dist. LEXIS 226031, at *39 (W.D.N.Y. Dec. 13, 2022) (quotation marks and citation omitted). "Because the defense requires consideration on the merits, it is heavily fact dependent, which makes a statute of limitations '[d]ismissal under Rule 12(b)(6) . . . irregular." *Kattu,* 2013 U.S. Dist. LEXIS 110413 at 12 (citation omitted) (quoting *U.S. v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). "Ordinarily, dismissal of a claim at the complaint stage based on a statute of limitations affirmative defense 'is appropriate only if a complaint clearly shows the claim is out of time.'" *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

In this case, the Court should find that it is not apparent from the face of the SAC that Plaintiffs are "out of time" when they added Scriven as a defendant. Indeed, the Court has essentially already reached this conclusion in deciding Plaintiffs' motion to amend their complaint to add Defendant Scriven when it held that it could not "say with certainty on the record before it that the limitations period has not been tolled or that the State Defendants' conduct in defending this action does not estop them [or Scriven] from relying on the limitations bar . . . ." *Ocasio*, 2022 U.S. Dist. LEXIS 226031 at *42. This finding, alone, cautions against dismissal at the motion to dismiss stage.

Defendant Scriven's arguments in support of his statute of limitations affirmative defense further demonstrate why it is not suitable for resolution on a motion to dismiss. Defendant Scriven argues that dismissal on statute of limitations grounds is proper because "the plaintiffs have failed to allege any actions or inactions by Director Scriven that were deceptive or fraudulent." (Def. MOL at 7.) As argued above, this argument improperly flouts the Federal Rules of Civil Procedure.

*See* Point I above. The argument additionally misstates the law because Plaintiffs are not required to prove "deceptive or fraudulent acts" to establish equitable tolling. Equitable tolling applies where "extraordinary circumstances prevented a party from timely performing a required act." *Ocasio*, 2022 U.S. Dist. LEXIS 226031 at *38–39. Here, the SAC plainly alleges an extraordinary circumstance that prevented them from timely adding Scriven as a defendant—the death of Ms. Guardiola as a result of a fraudulent wellness check. Plaintiffs could not have learned of Defendant Scriven's involvement in causing the fatal wellness check on October 4, 2017, because the person who would have made that connection, Ms. Guardiola, was killed. Though they need not, Plaintiffs do allege fraudulent and deceptive misconduct by Scriven that concealed his culpability in causing Ms. Guardiola's death from Plaintiffs. *See* SAC ¶ 163 (alleging that defendants, including Defendant Scriven conspired together in "[j]ointly devising a false, exculpatory version of the events of October 4, 2017, which would be told to investigating authorities" and "[s]ubmitting false reports, statements, and testimony to support and corroborate the fabricated allegations . . .").

Defendant Scriven additionally argues that "plaintiffs cannot allege that they were unaware of Director Scriven's alleged involvement." (Def. MOL at 7.) This argument fails because it is unreasonably premised on a non sequitur—that Plaintiffs were aware of Defendant Scriven's involvement in causing Ms. Guardiola's death simply because "plaintiffs were aware of Director Scriven's identity." *Id.* No explanation is given for how this conclusion can be drawn. The assertion additionally fails because it contradicts the plain allegations of the SAC—that Defendant Scriven concealed his culpability in causing Ms. Guardiola's death by devising and disseminating a false, exculpatory version of those events.  (SAC ¶ 163).

Finally, Defendant Scriven argues that "the plaintiffs have failed to show that they acted with reasonable diligence during the time needed to toll the statute of limitations due to the failure

to try and add Director Scriven as a defendant at the time of the First Amended Complaint. (Def. Mem. at 8.) This argument fails for the reasons previously stated. It is premised on the unreasonable non sequitur that Plaintiffs were aware of Director Scriven's culpability because they were aware of his identity; and it improperly requires Plaintiffs to anticipate and plead facts to overcome an affirmative defense. Requiring Plaintiffs to make a showing of diligence on a motion to dismiss is "premature" because it is not evident on the face of the complaint whether Plaintiffs exercised reasonable diligence in investigating their claims. *BPP Ill., LLC v. Royal Bank of Scot. Group PLC*, 603 Fed. Appx. 57, 59 (2d Cir. 2015). "[T]he present record is insufficient to decide this question as a matter of law." *Id.*

Defendant Scriven relies on several cases to support of his argument that a statute of limitations affirmative defense can be decided on a motion to dismiss. Def. Mem. at 6-7. Those cases are inapposite and unpersuasive. With the exception of *Pietri*, each case cited by Defendant Scriven was ripe for determination on a motion to dismiss because the complaints pled facts establishing that the plaintiff had failed to timely file their lawsuit despite timely knowledge of defendants' culpability. *See Robie v. Obst*, No. 14 Civ. 57S (WMS), 2015 U.S. Dist. LEXIS 89991, at *9-10 (W.D.N.Y. July 10, 2015)  (plaintiff's timely awareness of defendant's responsibility for alleged injury evident from fact she immediately sought redress against defendants through administrative remedies); *Syfert v. City of Rome*,768 F. App'x 66, 68 (2d Cir. 2019) (plaintiff had admittedly recognized the defendant's liability for the "mistake" causing his alleged injury approximately nine years before filing his claim); *Toto, Inc. v. Sony Music Entm't*, No. 12 Civ. 1434 (LAK)(AJP), 2012 U.S. Dist. LEXIS175389, at *39-44 (S.D.N.Y. Dec. 11, 2012).(plaintiff was aware of injury when defendant failed to timely complete audit report). Those cases are entirely unlike the instant case where Plaintiffs were unaware of Defendant Scriven's liability for

causing Ms. Guardiola's injury. Ms. Guardiola died as a result of the injury and Defendant Scriven participated in the conspiracy to cover up his responsibility for causing her death.

Defendant Scriven's reliance on *Pietri v. N.Y.S. Office of Court Admin.* is particularly misguided because the court in that case did not rule on the defendant's motion to dismiss. 936 F. Supp. 2d 120 (E.D.N.Y. 2013). Rather, the court granted the plaintiff permission to amend his complaint to plead facts that would support the equitable estoppel argument he raised for the first time in his opposition to defendant's motion. *Id.* at 137–38. Indeed, the language that Defendant Scriven cites from *Pietri* is actually the court directing the plaintiff what his amended complaint should include. *Id.* Regardless, Plaintiffs' SAC already alleges facts that sufficiently establish equitable tolling to defeat Scriven's affirmative defense at this stage of the litigation.

Based on the foregoing, the Court should find that it is not apparent from the face of the SAC that Plaintiffs are barred from adding Scriven as a defendant. Defendant Scriven's motion to dismiss must be denied.

## III.   CLAIMS AGAINST DEFENDANT SCRIVEN SHOULD BE EQUITABLY TOLLED DUE TO THE STATE'S DILATORY CONDUCT

Should the Court consider Defendant Scriven's timeliness argument, as the record in this case has made abundantly clear, Plaintiffs believe that the defense of equitable tolling is appropriate with respect to all claims against Defendant Scriven due to the State Defendants' and Defendant Scriven's ongoing dilatory conduct that has substantially delayed this nearly 5-year-long litigation.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). The doctrine of equitable tolling is applied "only in rare and exceptional circumstances, where . . . extraordinary circumstances prevented a party from timely performing

a required act." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (internal quotations omitted); *see Rene v. Jablonski*, 2009 U.S. Dist. LEXIS 72533, 2009 WL 2524865, *6 (E.D.N.Y. 2009) (statute of limitations deadlines may "be equitably tolled in 'rare and exceptional circumstance[s],' in which a party is 'prevented in some extraordinary way from exercising [her] rights'") (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.), *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 63 (2000), and *Johnson*, 86 F.3d at 12).

Defendants argue that Plaintiffs should have filed their § 1983, wrongful death, and pain and suffering claims against Defendant Scriven back in 2020 and that the statute of limitations on these claims has expired. However, Plaintiffs did not discover the extent of Defendant Scriven's involvement in the circumstances relevant to Ms. Guardiola's claims before the relevant statute of limitations had passed. As discussed above, Defendant Scriven's culpability for causing Ms. Guardiola's injuries was concealed by Ms. Guardiola's death and the conspiracy to cover-up defendants' responsibility for causing her death. Additionally, as this Court has already explained, "the State Defendants repeatedly ignored court-ordered deadlines and mutually agreed-upon, court-approved extensions relating to the production of mandatory disclosures and responses to plaintiffs' requests for production of documents, interrogatories, and supplemental interrogatories. Their inexcusable conduct resulted in substantial delay in plaintiffs' receipt of evidence relevant to their claims against Scriven." *Ocasio*, 2022 U.S. Dist. LEXIS 226031, at *40.

Plaintiffs' inability to obtain the facts necessary to add Scriven as a defendant before the relevant statute of limitations had passed was not attributable to a lack of diligence, but was instead a result of delays in State Defendants' provision of discovery. Though the State Defendants in this case had exclusive possession of the overwhelming majority of evidence related to Plaintiffs claims, they did not identify Defendant Scriven or produce documents identifying the true extent

of his involvement in the circumstances relevant to Ms. Guardiola's claims until well after the relevant statute of limitations periods had expired. Without barely any discovery from Defendants, and because Ms. Guardiola had been killed, Plaintiffs' ability to identify Defendant Scriven and his relationship to the claims in this matter was stymied. Even when the State Defendants did finally identify Mr. Scriven as someone potentially having information relevant to this matter—after the statute of limitations periods had passed—it was only indirectly by generally referring to a New York State Police investigation report.  The State Defendants cannot dispute that they did not identify Mr. Scriven or produce any documents identifying the extent of his involvement prior to the expiration of the statute of limitations.

The State Defendants' responses to plaintiffs' Supplemental Interrogatories were served in September 2021, again well after defendants had agreed to do so and only after the Court had granted Plaintiffs' motion to compel and imposed sanctions. In addition, the State Defendants delayed until June 2022 producing the voicemail message from Guardiola to another parole officer on October 3, 2017, which refers to a conversation she had with Scriven about her return to work. Plaintiffs recently were again forced to file a third motion to compel after the State Defendants' continuing delay tactics, which continue to delay obtaining relevant, critical discovery related to Defendant Scriven's conduct. (*See* Plaintiffs' pending Motion to Compel at Dkt. No. 188). As a result, Plaintiffs respectfully request equitable relief from the limitations bar.

As a result, should the Court decide Defendant Scriven's motion to dismiss on timeliness claims at the motion to dismiss stage, it should be denied on the basis that the claims against him have been equitably tolled due to his and the State Defendants' dilatory conduct.

IV.   **DEFENDANT SCRIVEN SHOULD BE EQUITABLY ESTOPPED FROM CLAIMING THE STATUTE OF LIMITATIONS HAS PASSED BECAUSE OF THE STATE DEFENDANTS' MISREPRESENTATIONS**

Alternatively, Plaintiffs assert Defendant Scriven should be equitably estopped from arguing that claims against him are untimely because of the State Defendants' repeated material misrepresentations.

"The elements of estoppel are a material representation, reasonable reliance, and provable damages." *Schwebel v. Crandall*, 967 F.3d 96, 102-03 (2d Cir. 2020); *see also Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) ("[E]quitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.").

Throughout this litigation, Plaintiffs have repeatedly sought court intervention in order to compel the most basic discovery obligations from the State Defendants including, but not limited to, court ordered, mandatory Fed. R. Civ. P. Rule 26 disclosures and sworn interrogatory responses. For example, as this Court has highlighted, the State Defendants did not produce initial disclosures until September 30, 2020—four days before the expiration of the statute of limitations and nearly seventeen months after the court-ordered deadline. The State Defendants similarly delayed serving responses to plaintiffs' First Set of Interrogatories. When the State Defendants did serve their responses, they were woefully deficient including, but not limited to, failing to identify Defendant Scriven as one of the individuals who had been in contact with Guardiola about her medical leave and failed to identify him as one of the individuals who had reviewed her medical leave paperwork. *Ocasio*, 2022 U.S. Dist. LEXIS 226031, at *40-41.

The Second Circuit has made clear that intent to mislead is not required, and that "misrepresentation by silence" can be sufficient to establish estoppel. *Kosakow*, 274 F.3d at 726

13

("Accordingly, we hold that a party may be estopped where that party makes a definite misrepresentation (or, in the present case, a misrepresentation by silence) and had reason to believe the other party would rely upon it, regardless of whether the person making the representation intended to deceive."). Plaintiffs were forced to engage in years of motion practice in order to obtain the most basic information from the State Defendants. As a result, Plaintiffs were not able to apprehend the extent of Defendant Scriven's involvement in the tragic October 4, 2017 wellness check. Plaintiffs have alleged that the State Defendants and Defendant Scriven "[j]ointly devis[ed] a false, exculpatory version of the events of October 4, 2017, which would be told to investigating authorities." SAC ¶ 163(e).[2] Perhaps most significantly, it was only after the deposition of Defendant O'Connor that it became clear that Defendant Scriven was the sole individual who falsely represented to Defendant O'Connor that Ms. Guardiola had not been heard from for three weeks. (Dkt No. 143, Arena Aff., Exhibit 10 at 28:13-22). As a result, Plaintiffs now assert that Defendant Scriven should be estopped from arguing that the amendment adding claims against him are untimely.

## V.    THE LAW OF THE CASE PRECLUDES DEFENDANT SCRIVEN FROM LITIGATING ISSUES ALREADY DECIDED BY THIS COURT

Defendant Scriven makes no argument as to the substance of Plaintiffs' allegations against him for (1) violations of the U.S. Constitution brought pursuant to 42 U.S.C. § 1983, (2) conspiracy

---

[2] For example, though Defendant Scriven was interviewed as part of the New York State Police investigation—based on what little is noted from his interview—he did not disclose that he had spoken to Ms. Guardiola within the three weeks prior to her killing. He did not disclose that he had spoken to Ms. Guardiola the day before her death.  In the many years this case has been pending, and during which time Defendant Scriven was in communication with counsel for the State Defendants, Defendant Scriven has not—nor has counsel for the State Defendants—corrected the misrepresentation that not only did he have information that Ms. Guardiola was in contact with her employer in the three weeks he told Defendant O'Connor she had not been heard from, but that Defendant Scriven himself spoke with her the day before she was killed. *See also Ocasio*, 2022 U.S. Dist. LEXIS 226031, at *41 ("Significantly, the answers that were served failed to identify Scriven as one of the individuals who had been in contact with Guardiola about her medical leave and failed to identify him as one of the individuals who had reviewed her medical leave paperwork. Remarkably, neither inaccuracy appears to have been corrected to date.").

to violate the Fourth and Fourteenth Amendments brought pursuant to 42 U.S.C. § 1983, (3) wrongful death, and (4) pain and suffering. Defendant Scriven's sole arguments with respect to the substance of the allegations in the SAC relate to the New York State constitutional claims. Each of these claims has already been adjudicated by this Court. *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 319–28 (W.D.N.Y. 2021). Insofar as Defendant Scriven urges this Court to construe the pain and suffering claim as one for negligence, the Court has also previously held that Plaintiffs' pain and suffering claim is one for conscious pain and suffering. *Id.* at 328. Indeed, the exact argument raised by Defendant Scriven as to the New York State constitutional claims has already been adjudicated by this Court. *Compare* Def. MOL at 9–10 ("In the instant matter the plaintiffs' Fourth Cause of Action is based on the same conduct as they base their Section 1983 causes of action.") *with, Ocasio*, 513 F. Supp. 3d at 327 ("[Defendant] argues that to the extent plaintiffs allege that his actions violated the New York State Constitution, those claims are duplicative of plaintiffs' Section 1983 claims, which provide an adequate remedy at law. . . Plaintiffs . . . note that courts in this Circuit have typically held that 'the more prudent course' in the early stages of a lawsuit is to deny motions to dismiss parallel state law claims, as they will succeed or fail together with the federal causes of action in any event. The Court sees no reason not to follow this well-settled precedent. Defendants' motion to dismiss Plaintiffs' parallel state claims is therefore denied.") (quoting *Haus v. City of New York*, 2011 U.S. Dist. LEXIS 155735 at *257 (S.D.N.Y. 2011)). The law of the case doctrine holds that, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). As Defendant Scriven's arguments with respect to the New York State Constitutional claims were precisely considered and

15

adjudicated by this Court, the Court should not consider Defendants arguments at Point III and should deny the motion. Def. MOL at 9–10).

## VI.    PLAINTIFFS' NEW YORK STATE CONSTITUTIONAL CLAIMS MUST SURVIVE

Should the Court consider Defendants' motion as to Plaintiffs' New York State constitutional claims, each such claim has been more than sufficiently alleged to survive a motion to dismiss. In *Brown v. State*, 89 N.Y.2d 172 (1996), relied upon by the court in *Haus*, the Court of Appeals recognized civil claims under the New York State Constitution, Art. I, §§ 11-12, based on large-scale racially motivated police interrogations. The Court in *Haus* reasoned that dismissal of such claims at the motion to dismiss stage was premature: "[i]f plaintiffs prevail on their parallel federal claims, there will be no occasion to address the issue definitively since the state-law claims will be duplicative and thus not trigger any additional relief. If the plaintiffs fail in their burden of proof on the federal claims, the state-law claims will also presumably fail since they embody comparable legal standards." 011 U.S. Dist. LEXIS 155735, at *257. Citing *Haus*, this Court has already denied a motion to dismiss Plaintiffs' State constitutional claims *Ocasio*, 513 F. Supp. at 327. Thus, the Court should similarly deny Defendant Scriven's motion to dismiss the State constitutional claims as well.

## CONCLUSION

For the foregoing reasons, and based on the pleadings and papers filed in this action, Defendant Scriven's motion should be denied in its entirety. Should the Court perceive deficiencies with respect to any of their claims, Plaintiffs request the opportunity to amend their pleading to amplify the allegations. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990).

Dated:  March 14, 2023
        New York, New York

Respectfully submitted,
BELDOCK LEVINE & HOFFMAN LLP

By: /s/ Jonathan C. Moore
  Jonathan C. Moore
  Luna Droubi
  Marc A. Cannan
  Marc Arena

  *Attorneys for Plaintiffs*