UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALYSA OCASIO, ANDREW OCASIO and
JAHAIRA HOLDER, as Administratrix of the Estate
of Sandy Guardiola,

                                      Plaintiffs,

                                           v.

CITY OF CANANDAIGUA, a municipal entity;
Canandaigua Police Chief STEPHEN HEDWORTH,
in his individual and official capacities; Canandaigua
Police Sergeant SCOTT KADIEN, in his individual
capacity; DOCCS Regional Director GRANT SCRIVEN,
in his individual capacity; DOCCS Parole Chief DAWN
ANDERSON, in her individual capacity; DOCCS Senior
Parole Officer THOMAS O'CONNOR, in his individual
capacity; and DOCCS Senior Parole Officer BETH
HART-BADER, in her individual capacity,

                                      Defendants.
_____

<u>DECISION AND ORDER</u>

18-CV-6712DGL

        Plaintiffs bring this action against defendants, the City of Canandaigua, its police chief, a police sergeant, and several employees of the Department of the New York State Department of Corrections and Community Supervision ("DOCCS").

        On December 13, 2022, Magistrate Judge Marian W. Payson granted plaintiffs' motion to file a Second Amended Complaint, which included claims asserted against a new defendant, DOCCS Regional Director Grant Scriven ("Scriven"). (Dkt. #165, #167).

        Scriven now moves to dismiss the claims against him as untimely. (Dkt. #186). For the reasons that follow, that motion is denied.

## FACTUAL BACKGROUND

Plaintiffs Alysia Ocasio, Andrew Ocasio, and Jahaira Holder ("plaintiffs"), are the heirs and executrix of the estate of decedent Sandy Guardiola ("Guardiola"), who was shot to death in her bed by City of Canandaigua Police Sergeant Scott Kadien on the afternoon of October 4, 2017.

According to the Second Amended Complaint (Dkt. #167), Guardiola was a parole officer who was initially employed by the Rochester DOCCS office. During the time she worked there, she complained about hostile and discriminatory treatment by supervisors and coworkers, which was allegedly permitted to continue by several senior officials, including Scriven and Senior Parole Officer Thomas O'Connor ("O'Connor"). Guardiola was home on medical leave from September 4, 2017 through October 3, 2017 due to injuries from a motor vehicle accident: during that time, she was granted a voluntary transfer to the Binghamton DOCCS office.

On the afternoon of October 3, 2017, Guardiola spoke on the phone with the Bureau Chief of the Binghamton DOCCS office,[1] and informed him that she was doing well and waiting for a doctor's note to clear her to return to work.

The following day, the Binghamton Bureau Chief allegedly tried to telephone Ms. Guardiola and got no answer. He informed DOCCS Regional Director Scriven of this. Scriven then contacted Parole Supervisor O'Connor at Guardiola's former office in Rochester, and directed him to perform a "wellness" check on Guardiola. According to testimony from O'Connor, Scriven falsely stated that the reason for the wellness check was that Guardiola had not been heard from for three weeks.

---

[1] The Binghamton Bureau Chief's name is Patrick O'Connor. To avoid confusion between him and individual defendant (and Rochester Bureau Parole Supervisor) Thomas O'Connor, the Court will refer to Patrick O'Connor by his job title.

2

Later on the afternoon of October 4, 2017, O'Connor went to Guardiola's apartment complex in Canandaigua, and met with an employee of the complex's management company. After they were unable to determine whether Guardiola was home, O'Connor called 9-1-1 and requested a welfare check on Guardiola, stating that she had been "missing" from work for three weeks.

Sergeant Kadien was dispatched to Guardiola's apartment, and met with O'Connor. The Second Amended Complaint alleges that upon information and belief, O'Connor and Kadien discussed Guardiola's allegations of employment discrimination at the DOCCS office in Rochester, and other issues related to Guardiola's transfer to the DOCCS office in Binghamton. They ultimately agreed that only Kadien would enter Guardiola's apartment, due to "an issue between [Guardiola] and Parole." (Dkt. #167 at ¶9).

At Kadien's request, building management staff escorted him to Guardiola's apartment and unlocked it for him. Kadien walked through the apartment past the kitchen and bathroom, and opened the closed door to Guardiola's bedroom, where she was sleeping. As Kadien entered Guardiola's bedroom, Guardiola awoke and reached for her service revolver, which she kept under a pillow for protection, after receiving threats from parolees with serious mental issues.

Kadien allegedly did not attempt to retreat or to announce that he was a police officer, but instead, shot Guardiola in the right arm, with the bullet passing through her arm and into her right ear and head. Guardiola's firearm then discharged in the opposite direction from Kadien and into a wall, whereupon Kadien shot Guardiola twice more, in the head and abdomen. The time that elapsed between Kadien's entry into the apartment and his fatal shooting of Guardiola was purportedly mere seconds.

3

Although emergency responders had been stationed across the street, Kadien did not immediately summon them, but instead called for backup. After other law enforcement personnel arrived and allegedly engaged in discussions about how to handle the matter for approximately 10 minutes, emergency responders were finally called. Guardiola succumbed to her injuries a short time later.

An hour and a half after Guardiola was killed, O'Connor called Scriven, who said that he'd already heard about the incident and was en route to the apartment complex. Scriven arrived thereafter and spoke with O'Connor.

This action followed. The Second Amended Complaint asserts the following causes of action against Scriven: (1) violations of Guardiola's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. §1983; (2) conspiracy to violate Guardiola's Fourth and Fourteenth Amendment rights, pursuant to 42 U.S.C. §1983; (3) violation of the New York State Constitution; (4) wrongful death; and (5) conscious pain and suffering. (Dkt. #167).

## DISCUSSION

### I.   Relevant Standard

On a motion to dismiss under Rule 12 (c), courts "employ the same standard applicable to Rule 12(b)(6) motions to dismiss." *Montgomery v. NBC TV*, 2020 U.S. App. LEXIS 35731 at *2 (2d Cir. 2020)(unpublished opinion)(quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015)(internal quotation marks and alterations omitted)).

The Court's task is thus to determine whether, "accept[ing] the allegations contained in the complaint as true, and draw[ing] all reasonable inferences in favor of the non-movant," plaintiffs have stated a facially valid claim. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In order to be found sufficient, a pleading must set forth sufficient facts to suggest that a cause of action is

legally plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Ultimately, where a plaintiff has not "nudged their claim[] across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

## II.   Timeliness of the Claims Against Scriven

Scriven moves to dismiss the claims against him on statute of limitations grounds.

The Court notes that this is not the first occasion the timeliness of plaintiffs' claims against Scriven has been addressed in federal court. In her December 13, 2022 Decision and Order concerning plaintiffs' motion for leave to file a Second Amended Complaint, Magistrate Judge Payson determined that all of the claims against Scriven in the then-proposed Second Amended Complaint were already untimely. (Dkt. #165). *See Ocasio v. City of Canandaigua*, 2022 U.S. Dist. LEXIS 226031 at *22-*37 (W.D.N.Y. 2022).

However, Magistrate Judge Payson granted the plaintiffs' motion to amend the Complaint and assert the untimely claims against Scriven, finding that the record contained troubling evidence of "inexcusable conduct" on the part of the defendants. This included inaccurate and incomplete discovery responses which remained uncorrected at the time of her decision, and repeated non-compliance with court-ordered discovery deadlines, which had together served to completely obscure Scriven's role in the events that led to Guardiola's death until after the applicable statutes of limitations had passed. Magistrate Judge Payson concluded that the defendants' obfuscation was sufficiently serious as to raise questions about whether plaintiffs were entitled to equitable tolling (tolling of the statute of limitations to account for extraordinary circumstances that prevents otherwise-diligent plaintiffs from bringing timely claims), or equitable estoppel (preventing a party from unconscionably taking advantage of its own wrongful actions while asserting a strict legal right). *Id*., 2022 U.S. Dist. LEXIS 226031 at *40.

Magistrate Judge Payson made no final determination as to whether plaintiffs were entitled to such relief, but noted that if Scriven did eventually assert the statute of limitations as a defense to the Second Amended Complaint, "plaintiffs . . . may choose whether to invoke either or both of the equitable doctrines, and the Court may then address the issues after full briefing and on a fully-developed record." *Id*., 2022 U.S. Dist. LEXIS 226031 at *42.

Scriven now seeks to dismiss the claims against him as insufficiently stated, on the grounds that the claims against him are untimely, and that plaintiffs' Second Amended Complaint does not set forth sufficient facts to demonstrate entitlement to equitable tolling or equitable estoppel.

Scriven's argument misses the mark. Initially, equitable tolling and equitable estoppel are responses to affirmative defenses, and are not required to be pled. *See Abbas v. Dixon*, 480 F.3d 636, 639-40 (2d Cir. 2007)("[t]he pleading requirements in the Federal Rule of Civil Procedure…do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses").

In any event, it is well settled in the Second Circuit that a motion to dismiss is typically not the appropriate mechanism for securing a determination of whether equitable tolling or equitable estoppel apply, given the highly fact-intensive analysis that is required, which often "depends on matters outside the pleadings." *Marquez-Ortiz v. United States*, 2021 U.S. Dist. LEXIS 163874 at *4 (S.D.N.Y. 2021). *See Santos v. Syracuse Police Dep't*, 2022 U.S. Dist. LEXIS 206681 at 7 n.4 (N.D.N.Y. 2022)(declining to recommend dismissal of claims that appeared untimely from the face of the complaint, where plaintiff had not had the opportunity to present facts supporting a claim of equitable tolling); *Goodman v. Local 804 Union of the Int'l Bhd. of Teamsters (IBT)*, 2022 U.S. Dist. LEXIS 177638 at *16 (E.D.N.Y. 2022)(same).

It is manifest that deciding equitable tolling or equitable estoppel issues in this matter will require consideration of extensive matters outside the pleadings. As such, they can only be decided upon a motion for summary judgment, with "full briefing and on a fully-developed record." *Ocasio*, 2022 U.S. Dist. LEXIS 226031 at *42. *See Cortes v. City of New York*, 700 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (because "the statute of limitations is an affirmative defense not required to be negated on the face of the pleadings, and . . . [the] [p]laintiff has proffered arguments and evidence that might support a finding of waiver or grounds for equitable tolling, [the] [d]efendants' motion [to dismiss] is denied insofar as it is premised on statute of limitations grounds, without prejudice to renewal of their limitations defense in later summary judgment motion practice or at trial"). If any party wishes to file such a motion, the Court will afford it due consideration.

## CONCLUSION

For the reasons stated above, Scriven's motion to dismiss the claims against him pursuant to Fed. R. Civ. Proc. 12(b)(6) (Dkt. #186) is denied, without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
July 10, 2023.