**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------- X

ALYSA OCASIO, ANDREW OCASIO, and JAHAIRA
HOLDER, as Administratrix of the Estate of Sandy Guardiola,

                                  Plaintiffs,

      - against -

The CITY OF CANANDAIGUA, a municipal entity;
Canandaigua Police Chief STEPHEN HEDWORTH, in
his individual and official capacities; Canandaigua Police
Sergeant SCOTT KADIEN, in his individual capacity;
DOCCS Regional Director GRANT SCRIVEN, in his
individual capacity; DOCCS Parole Chief DAWN
ANDERSON, in her individual capacity; DOCCS Senior
Parole Officer THOMAS O'CONNOR, in his individual
capacity; DOCCS Senior Parole Officer BETH HART-
BADER, in her individual capacity,

                                  Defendants.

No: 18-cv-06712
(MAV)(MWP)

-------------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT
## TO FED. R. CIV. P. 26(g) and 37 FOR FAILURE TO
## TIMELY PRODUCE A DOCUMENT RELEVANT
## TO SPOLIATION DISCOVERY

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400
*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................. **1**

**RELEVANT FACTUAL AND PROCEDURAL HISTORY** ................................ **1**

**ARGUMENT** ........................................................................................ **11**

   **I.**    **DEFENDANT SHOULD BE SANCTIONED UNDER FED. R. CIV. P. 26(g)(3) . 12**

   **II.**   **DEFENDANT SHOULD BE SACTIONED UNDER FED. R. CIV. P. RULE 37 . 15**

      **A.**   **Defendant Was Obligated to Produce the Withheld Document** ......................... **15**

      **B.**   **NYAG Counsel for Defendant O'Connor Had a Culpable State of Mind** .......... **16**

      **C.**   **The Withheld Documents Are Relevant to this Action** ......................................... **18**

   **III.**   **DEFENDANT'S IMPROPER WITHHOLDING OF THE NOVEMBER 28, 2018, PRESERVATION LETTER SUBSTANTIALLY PREJUDICED PLAINTIFFS AND REQUIRES SUBSTANTIAL SANCTIONS** ............................................. **18**

**CONCLUSION** ................................................................................... **21**

## **TABLE OF AUTHORITIES**

**Cases**

*Abreu v. City of New York*, 208 F.R.D. 526 (S.D.N.Y. 2002) ...................................................... 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ........................................................................ 12

*Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979) ......................................................................................................................... 12

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006) ..................................................... 15

*Friends of Animals Inc. v. United States Surgical Corp.*, 131 F.3d 332 (2d Cir. 1997) ............. 12

*Grammar v. Sharinn & Lipshie*, P.C., No. 14 Civ. 6774 (JCF), 2016 U.S. Dist. LEXIS 15235, (S.D.N.Y. Feb. 8, 2016) ..................................................................................................... 11

*In re. September 11th Ins. Coverage* Cases, 243 F.R.D.114 (S.D.N.Y. 2007) ............... 15, 16, 18

*Kiobel v. Royal Dutch Petro. Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 U.S. Dist. LEXIS 55185 (S.D.N.Y. June 25, 2009) ........................................................................................ 12

*Martinez v. City of New York*, No. 16 Civ. 79, 2018 U.S. Dist. LEXIS 13409 (E.D.N.Y. Jan. 24, 2018) ................................................................................................................................. 18

*Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178 (S.D.N.Y. 2003) ......................................................................................................... 13

*Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63 (W.D.N.Y. 2011) .......................... 20

*Sakon v. Andreo*, 119 F.3d 109 (2d Cir. 1997) ........................................................................ 12

*United States v. Hudson*, 11 U.S. 32 (1812) ............................................................................ 12

*Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216 (2d Cir. 2020) ............................................. 12

**Statutes**

Fed. R. Civ. P. 26.................................................................................................................. 13, 15

Fed. R. Civ. P. 37.................................................................................................................. 12, 15

## PRELIMINARY STATEMENT

Plaintiffs must seek judicial intervention in this case yet again based on the improper discovery conduct of Defendant and false and/or misleading information on the part of Defendant and DOCCS. Plaintiffs have spent over a year seeking answers—answers to why the email mailboxes of key players in this litigation were destroyed, answers to why they were not notified for years about the destruction of the emails, answers to what, if anything, was done to prevent their destruction, answers to who was on notice and when. Time and time again, Plaintiffs have been told the emails were purged in the course by an innocent, automated process. However, a new document—which the New York Attorney General ("NYAG") counsel for Defendant O'Connor has possessed for six years but never produced to Plaintiffs—shows that Defendant and DOCCS were on notice of the need to preserve the spoliated email accounts well before they were purged.

Because this discovery withholding is separate and apart from the spoliation issue before the Court—and because of the additional prejudice suffered by Plaintiffs as a result of this withholding—Plaintiffs move separately here for sanctions regarding the withholding of the NYAG's preservation letter to DOCCS. For the reasons set forth herein, the Court should issue sanctions for Defendant's failure to disclose relevant and responsive discovery.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiffs assume the Court's familiarity with the underlying facts and various prior motions of the case, including the pending motion for spoliation sanctions, Dkt. Nos. 307-309, from which this motion stems.[1]

---

[1] For a more extensive summary of the timeline of various related actions, notices of intention, and spoliation-related actions, *see* Plaintiff's Motion for Spoliation Sanctions. (Dkt. No. 308 at 2-9).

**Initial Notice of the Need to Preserve Evidence**

Sandy Guardiola was shot and killed in her bed on October 4, 2017, by Police Officer Scott Kadien after Defendant O'Connor requested a wellness check on Ms. Guardiola based on false information. One week later, on October 11, 2017, counsel for Ms. Guardiola's family served a preservation letter on DOCCS requesting that it preserve all relevant records. (Declaration of Marc Cannan (Cannan Decl.), Exhibit ("Ex.") 1 at 4).

**The NYAG Recognizes the Need to Preserve Evidence**

On November 17, 2017, Jahaira Holder, as Administratrix of the Estate of Sandy Guardiola ("the Estate"), filed a Notice of Intention ("NOI") with the NYAG placing it on notice that the Estate intended to file a claim against the City of Canandaigua and the Canandaigua Police Department. (Cannan Decl., Ex. 2). Three days later, on November 20, 2017, the NYAG wrote the Deputy Commissioner and Counsel of the New York State Police ("NYSP") and provided him with a copy of the Estate's NOI, advising of the need to place a litigation hold and preserve relevant evidence, including electronic mail. (*See* Cannan Decl., Ex. 3).

Eighteen days later, on December 8, 2017, the Estate filed a second NOI, placing the NYAG's office on notice it intended to file a claim against DOCCS.[2] (Cannan Decl., Ex. 4). On December 12, 2017, four days after the Estate served the NOI noting its intention to sue DOCCS, Ms. Guardiola's DOCCS email mailbox was permanently deleted. (Cannan Decl., Ex. 6).

**Plaintiffs File the Instant Litigation and the NYAG Notifies DOCCS of its Preservation Obligations**

On October 4, 2018, almost one year after they served the NYAG with notice of their intention to file a claim against DOCCS, Plaintiffs filed the instant action. (Dkt. No. 1). Plaintiffs

---

[2] The NYAG did not respond to this second NOI by sending DOCCS a letter and memorandum explaining its preservation options.

served Defendant O'Connor on November 13, 2018. (Dkt. No. 10). On November 28, 2018, NYAG Assistant Attorney General ("AAG") J. Richard Benitez sent DOCCS Deputy Commissioner of Counsel, Kevin Bruen, a copy of Plaintiffs' lawsuit and advised him of DOCCS's obligation to preserve evidence relevant to the litigation.[3] (Cannan Decl., Ex. 5). AAG Benitez provided the DOCCS Deputy Commissioner of Counsel with the exact same information regarding DOCCS's preservation obligation that was provided in the NYAG's November 20, 2017, letter to the NYSP. (*Compare* Cannan Decl., Ex. 5 *with* Cannan Decl., Ex. 3). In the letter, he advised DOCCS Deputy Commissioner of Counsel, *inter alia*, that:

- DOCCS: "must immediately ensure that a 'litigation hold' is placed on all electronic mail" etc.;

- that DOCCS must "take immediate steps to collect and preserve any such material … or other materials that potentially relate to the subject matter of this action";

- that DOCCS "should always err on the side of caution in preserving potentially relevant evidence" and "[u]nder no circumstances should [DOCCS] destroy potentially relevant evidence or delete potentially relevant e-mail or other electronic records";

- that the NYAG and DOCCS's counsel would need "to conduct a further analysis in the matter required by applicable court rules to further identify who has knowledge of the facts relevant to the case" and "adopt the broadest possible approach to identification of knowledgeable persons";

- that DOCCS should consult with ITS and consider "suspending any automatic routine electronic mail deletion procedures concerning electronic mail of any present or former agency employee who may have knowledge off any of the facts" in Plaintiffs' complaint;

- that DOCCS "must adopt a broad initial preservation protocol";

- that "the consequences of failing to preserve evidence are severe"; and

---

[3] This preservation letter is the subject of this motion, as it was never turned over to Plaintiffs, who did not learn of its existence until November 27, 2024, when Defendant O'Connor attached it as an exhibit in a briefing. *See* Dkt. No. 314-2, ¶ 15.

3

- that it was "critical" that DOCCS "be prepared to preserve electronic and other evidence from the outset of this case to avoid … the possibility of court-imposed sanctions, or adverse inferences."

(Cannan Decl., Ex. 5).

AAG Benitez's November 28, 2018, letter to DOCCS Deputy Counsel referred to the caption and docket number of this case, and contained a header that it was an "ATTORNEY-CLIENT COMMUNICATION." (*Id.*). The memorandum attached to the letter stated that the communication "constitutes an attorney-client communication" but that DOCCS employees "should assume that all communications they engage in from the initiation of the preservation effort will be discoverable and could be learned and used by the opponent in the lawsuit." (*Id.*).

**DOCCS Spoliates Defendant O'Connor's and Grant Scriven's Email Mailboxes**

On January 4, 2021, more than 2 years after NYAG Counsel for Defendant O'Connor notified DOCCS of its preservation obligations, Defendant O'Connor's DOCCS email mailbox was permanently deleted. (Cannan Decl., Ex. 6 at 2). On May 15, 2021, more than 2 years and 4 months after NYAG Counsel for Defendant O'Connor notified DOCCS of its preservation obligations, Grant Scriven's DOCCS email mailbox was also permanently deleted. (*Id.* at 7).

On March 2, 2023, almost 2 years after the spoliation, NYAG Counsel for Defendant O'Connor notified Plaintiffs for the first time that Grant Scriven's DOCCS "mailbox was purged upon his retirement and cannot be recovered." (Cannan Decl., Ex. 7). NYAG Counsel for Defendant O'Connor told Plaintiffs that "the Plaintiffs did not make a specific request for emails authored by Scriven and no search of his email account or mailbox was specifically performed. He was not a party." (*Id.*) NYAG Counsel for Defendant O'Connor did not acknowledge that it had notified its client, DOCCS, of its preservation obligations more than 2 years and 4 months prior to the spoliation. NYAG Counsel for Defendant O'Connor also did not acknowledge that it had identified Grant Scriven as someone likely to have discoverable information prior to the

spoliation in its September 30, 2020, Fed. R. Civ. Pro. Rule 26 disclosures.[4] (*See* Cannan Decl., Ex. 8).

**Plaintiffs' First Motion for Spoliation Sanctions**

On April 4, 2023, Plaintiffs moved to sanction NYAG Counsel for Defendant O'Connor for the spoliation of Grant Scriven's DOCCS email mailbox. In their opposition, the NYAG Counsel for Defendant O'Connor provided a declaration in support of its opposition which was purportedly based on its "review of the file, discussions and communications with DOCCS Counsel and DOCCS IT." (Dkt. No. 217 ¶ 3).

NYAG Counsel for Defendant O'Connor further declared that it was "advised by DOCCS counsel that there was not a Litigation Hold on [Scriven's] account" and that it was "purged in the normal course of business after his retirement." (*Id.* ¶ 4). Additionally, NYAG Counsel for Defendant O'Connor declared that Plaintiffs' October 11, 2017, preservation letter did "not specifically name Scriven, nor [did] it request that a full Litigation Hold be placed on any [DOCCS] email account, including his," and that "Plaintiffs have failed to establish that [State Defendant O'Connor] had a duty to preserve the Regional Director's email account or place it on a Litigation Hold, or had the authority to preserve it." (*Id.* at ¶¶ 33-34). Lastly, NYAG Counsel for Defendant O'Connor declared that the NYAG was "NOT retained to represent DOCCS in this federal court action," and that DOCCS was "not a party." (*Id.* at ¶ 13 (emphasis in original)).

NYAG Counsel for Defendant O'Connor did not advise Plaintiffs or the Court that the spoliation had occurred more than 2 years and 4 months after it had notified DOCCS of its

---

[4] Specifically, the NYAG stated that names of individuals likely to have discoverable information included the "parties in this action, staff and witness(s) who are mentioned in the attached documents." (Cannan Decl., Ex. 8) Grant Scriven was mentioned in the documents attached to NYAG Counsel for Defendant O'Connor's Rule 26 disclosure. (*Id.*)

preservation obligations regarding the instant litigation, which included the direction for DOCCS to suspend "any automatic routine electronic mail deletion procedures concerning electronic mail … who may have knowledge of any of the facts alleged in the Notice of Claim or Claim," and that "[n]o electronic mail files or accounts should be deleted upon a recovered employee's retirement or transfer" (Cannan Decl., Ex. 5). NYAG Counsel for Defendant O'Connor also did not advise Plaintiffs or the Court that it previously represented that DOCCS was its client when it notified DOCCS of its preservation obligations regarding the instant litigation. (*Id.*).

**The NYAG Discloses Additional Spoliation**

On May 12, 2023, NYAG Counsel for Defendant O'Connor notified Plaintiffs for the first time that additional DOCCS email mailboxes had been "purged," including the DOCCS email mailboxes of Ms. Guardiola and Defendant O'Connor. (Cannan Decl., Ex. 9).

On May 22, 2023, NYAG Counsel for Defendant O'Connor provided a sur-reply in further opposition to Plaintiffs' motion for spoliation sanctions. (Dkt. No. 223). In their brief, NYAG Counsel for Defendant O'Connor noted Plaintiffs' contention that "a litigation hold should have been placed on the email accounts of [DOCCS employees] by DOCCS and asserted that the NYAG "had no ability to place a hold" on the email mailboxes and that Defendant O'Connor "should not be punished for the actions of a third party." (*Id.* at 4). NYAG Counsel for Defendant O'Connor did not advise Plaintiffs or the Court that it had written to DOCCS in an "attorney-client" capacity and directed DOCCS to suspend "any automatic routine electronic mail deletion procedures concerning electronic mail … who may have knowledge of any of the facts alleged in the Notice of Claim or Claim," and that "[n]o electronic mail files or accounts should be deleted upon a recovered employee's retirement or transfer" (Cannan Decl., Ex. 5).

**The June 15, 2023, Spoliation Hearing**

On June 15, 2023, a hearing was held regarding Plaintiffs' spoliation motion. (*See* Cannan Decl., Ex. 10). At that hearing, the Court inquired who had the responsibility for finding out what relevant documents existed and taking steps to see they were preserved (*id.* at 41), and expressed concern over what, if any, steps were taken to preserve the spoliated evidence (*id.* at 44). NYAG Counsel for Defendant O'Connor suggested that DOCCS's spoliation of email mailboxes was not improper because Plaintiffs' preservation letter did not "make a specific request for any litigation holds" (*id.* at 19), and "that the request to DOCCS made initially was narrow" (*id.* at 20). The NYAG additionally took the position that "DOCCS destroyed these emails and not my clients." (*Id.* at 45). Finally, the NYAG argued that "we do try to preserve," but that "in this particular case trying to anticipate everything that should have been preserved" was "challenging." (*Id* at 47). NYAG Counsel for Defendant O'Connor did not advise Plaintiffs or the Court of NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS, specifically advising that "any automatic routine electronic mail deletion procedures" be suspended," and that "[n]o electronic mail files or accounts should be deleted." (Cannan Decl., Ex. 5).

**The NYAG Counsel for Defendant O'Connor's Compliance Affidavits**

After the hearing, the Court denied Plaintiffs' motion for spoliation without prejudice to renewal following further development of the factual record. (Dkt. No. 225). The Court further ordered the provision of affidavits and depositions from records custodians. (*Id.*).

On June 22, 2023, Plaintiffs served spoliation related discovery requests on the State Defendants. (Cannan Decl., Ex. 11). Defendants responded to Plaintiffs' request, objecting to each request and claiming, *inter alia*, that the responsive documents were under the control of

DOCCS. (Cannan Decl., Ex. 12). Thereafter, State Defendants produced compliance affidavits on August 11, 2023, including a declaration by DOCCS Associate Counsel David Harvey. (Cannan Decl., Ex. 13). Referring to Plaintiffs' October 2017 preservation letter and FOIL request, Mr. Harvey declared that those documents do "not make a specific request that any email accounts be placed on litigation hold." (*Id.* at ¶¶ 5, 11, 16). Mr. Harvey further declared that "[h]ad Beldock requested that specific email accounts be placed on a litigation hold, a DOCCS [Litigation Hold Compliance Officer] would have complied with the request." (*Id.* at ¶ 21). Mr. Harvey did not advise Plaintiffs of the NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS.

On August 30, 2023, Plaintiffs served the NYAG with supplemental requests for production of documents related to spoliation and the August 11, 2023, compliance declarations. (Cannan Decl., Ex. 14). Among other things, Plaintiffs requested that the NYAG produce all documents regarding legal preservation or retention of documents and information of Defendant O'Connor, Grant Scriven, and other relevant DOCCS employees (*id.* at Document Request 8); and "[a]ll documents regarding consultations with DOCCS's legal department regarding any legal preservation and/or retention obligations" (*id.* at Document Request 10). In response to Plaintiffs' requests, NYAG Counsel for Defendant O'Connor declared: "The records Plaintiffs are seeking are not in the custody or control of the individually named defendants. They are in the custody of [DOCCS and ITS,] neither of which is a party to this action. Accordingly, Defendants are unable to respond to this document request." (Cannan Decl., Ex. 15 at Interrogatory Responses 8, 10). NYAG Counsel for Defendant O'Connor did not disclose the NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS.

**Additional Spoliation Discovery from DOCCS**

From July to September of 2024, Plaintiffs and Defendants communicated regarding the spoliation discovery and conducted significant back and forth, with Plaintiffs providing certain requests and Defendants providing certain productions. In anticipation of spoliation related depositions, Plaintiffs, Defendant, and counsel for the non-parties met and conferred regarding narrowing the scope of the subpoenas and tailoring targeted discovery of the policies, procedures, and history of the preservation efforts for Ms. Guardiola, Grant Scriven, and Thomas O'Connor's email accounts. On July 15, 2024, Plaintiffs provided Defendant and the non-parties with a list of topics for the depositions and requests for documents which would inform the depositions. (Cannan Decl., Ex. 16). Plaintiffs indicated in subsequent meet and confers to Defendant and the non-parties that they would be amenable to forgoing the depositions of the record custodians should they receive documents and responses which would answer their remaining inquiries regarding the history of their preservation efforts.

On September 24, 2024, Plaintiffs served DOCCS with spoliation interrogatories. (Cannan Decl., Ex. 17). Included was an interrogatory that required DOCCS answer "[y]es or no, did an obligation for DOCCS to preserve the DOCCS email mailboxes of Sandy Guardiola, Thomas O'Connor, or Grand Scriven arise as a result of the October 4, 2017, incident." Plaintiffs additionally served a document request for "any and all correspondence sent or transmitted by the Office of the New York State Attorney General's Office . . . to DOCCS regarding their obligation to preserve documents." (*Id.*, Document Request 1).

On October 11, 2024, DOCCS provided a verified response to Plaintiffs' September 24, 2024, document requests and interrogatories. (Cannan Decl., Ex. 18). With regard to Plaintiffs' interrogatory as to whether DOCCS had a preservation obligation regarding the spoliated email

mailboxes, by DOCCS associate counsel Danielle May verified under penalty of perjury that "DOCCS had no obligation to preserve the DOCCS email mailboxes of Sandy Guardiola, Thomas O'Connor, and Grant Scriven after the October 4, 2017, incident." (*Id.* at ¶ 4). With regard to Plaintiffs' document request, DOCCS did not produce or notify Plaintiffs of the NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS. Danielle May verified that DOCCS had "[n]o responsive records." (*Id.*, Document Request Response 1).

**Additional Spoliation Discovery with NYAG Counsel for Defendant O'Connor**

On September 20, 2024, Plaintiffs served supplemental spoliation-related discovery requests on NYAG Counsel for Defendant O'Connor. (Cannan Decl., Ex. 3). Plaintiffs specifically requested "production of any and all correspondence sent or transmitted by the [NYAG] to [DOCCS]" regarding their obligation to preserve documents." (*Id.*). Plaintiffs' request additionally pointed out that the attorney-client privilege was not absolute, and the counsel's preservation instructions were discoverable where there has been a preliminary showing of spoliation. (*Id.*)

On October 22, 2024, Defendant O'Connor's counsel responded to Plaintiffs' September 24, 2024, discovery request, stating:

> My client in this action is Thomas O'Connor and he has no records to produce in response to your request. On his behalf, I reserve his rights with respect to any documents in possession of DOCCS or the OAG [Office of the New York State Attorney General] which are protected by attorney-client privilege.
>
> The Office of the Attorney General is not a party to this action. I do not have authority to respond to your demand for documents from my employer, as I am not representing the OAG in this or any other action. To the extent you are seeking communications between the OAG and DOCCS, you must request those documents from DOCCS and/or the OAG by subpoena so they can respond appropriately and raise any necessary objections, such as attorney-client privilege.

(Cannan Decl., Ex. 19). NYAG Counsel for Defendant O'Connor did not disclose their November 28, 2018, preservation letter to DOCCS.

**NYAG Counsel for Defendant O'Connor Produces its November 28, 2018, Preservation Letter**

On October 31, 2024, Plaintiffs filed a second motion for sanctions for the spoliation of the DOCCS email mailboxes of Sandy Guardiola, Grant Scriven, and Thomas O'Connor. (*See* Dkt. Nos. 307-09). In its opposition papers, NYAG Counsel for Defendant O'Connor maintained that Defendant O'Connor never had an obligation to preserve his DOCCS email mailbox and that he did not have the ability to control DOCCS. (*See* Dkt. No. 314 at 13-18). The Declaration of John Marsella accompanying Defendant O'Connor's reply memorandum states: "On December 17, 2018, Richard Benitez, the Assistant Attorney General initially representing Defendant O'Connor in this action sent a litigation hold to DOCCS and informed DOCCS to take steps to collect and preserve documents, including e-mails."[5] (*See* Dkt. No. 314-2, ¶ 15). The November 28, 2018, preservation letter NYAG Counsel for Defendant O'Connor sent to DOCCS—which had never been produced to Plaintiffs—was attached to the Marsella Declaration as Exhibit K. (*See id.*; Dkt. No. 314-1 at 49-53).

## ARGUMENT

Discovery sanctions "serve a three-fold purpose: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general." *Grammar v. Sharinn & Lipshie*, P.C., No. 14 Civ. 6774 (JCF), 2016 U.S. Dist. LEXIS 15235, at *7 (S.D.N.Y. Feb. 8, 2016) (citing *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d

---

[5] Plaintiffs note that the letter is dated November 28, 2018, and there is no indication on the document otherwise showing that it was sent December 17, 2018. Thus, Plaintiffs believe the December 17, 2018, date in the declaration was a clerical error and use November 28, 2018, as the date the letter was sent throughout this motion.

1062, 1066 (2d Cir. 1979)). "Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent powers." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997).

"Federal Rules of Civil Procedure 26(g) and 37 represent the principal enforcement power to punish discovery abuse." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 236-37 (2d Cir. 2020) (citation omitted). Where the nature of the alleged breach of a discovery obligation is the non-production of evidence, the court "has broad discretion to impose sanctions as is just, including an order (A) designating certain facts be taken as established; (B) refusing the disobedient party from introducing evidence or claims; (C) striking pleadings, staying the litigation until the obligation is satisfied, dismissing the action, or of default; (D) of contempt against the disobedient party; and (E) to produce a person for examination." *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002) (citing Fed. R. Civ. P. 37(b)(2); *Friends of Animals Inc. v. United States Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997)). "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." *Id.* at 106-107; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" (quoting *United States v. Hudson*, 11 U.S. 32, 33 (1812)).

## I.    DEFENDANT SHOULD BE SANCTIONED UNDER FED. R. CIV. P. 26(g)(3)

"Rule 26(g) is intended to deter and curb discovery abuses, including evasive responses, by 'explicitly encouraging the imposition of sanctions.'" *Kiobel v. Royal Dutch Petro. Co.*, No. 02 Civ. 7618 (KMW)(HBP), 2009 U.S. Dist. LEXIS 55185, at *8 (S.D.N.Y. June 25, 2009)

(quoting Fed. R. Civ. P. 26 advisory committee's note). The Rule requires that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." Fed. R. Civ. P. 26(g)(1). "By signing a discovery request, an attorney certifies that to the best of her 'knowledge, information, and belief formed after a reasonable inquiry,' the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case." *Kiobel*, 2009 U.S. Dist. LEXIS 55185 at *7 (quoting Fed. R. Civ. P. 26(g)(1)). The certification requirement "obliges each attorney to stop and think about the legitimacy of the discovery request, a response thereto, or an objection." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. and Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 26(g), advisory committee's note to 1983 Amendment, emphasis omitted).

Here, the Court should find that grounds exist to sanction NYAG Counsel for Defendant O'Connor under Fed. R. Civ. P. 26(g)(3). NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS Counsel is a key piece to understanding why the spoliation occurred in this matter—*i.e.,* intentionally—and the relationship between Defendant O'Connor's NYAG counsel and DOCCS— *i.e.,* attorney-client. NYAG Counsel should have produced the document once spoliation became an issue in this matter. It did not. It certainly should have produced the document in response to Plaintiffs' August 30, 2023, supplemental spoliation discovery document requests No. 8, requesting all documents regarding legal preservation and retention, and No. 10, requesting all documents regarding consultations with DOCCS's legal department regarding any legal preservation and or retention obligations.

(Cannan Decl., Ex. 15). It was not. In a signed discovery response, NYAG Counsel for Defendant O'Connor declared: "The records Plaintiffs are seeking are not in the custody or control of the individually named defendants. They are in the custody of [DOCCS and ITS,] neither of which is a party to this action. Accordingly, Defendants are unable to respond to this document request." (*Id.* at Response to Document Requests Nos. 8 and 10).

NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS Counsel also should have been produced in response to Plaintiffs' September 20, 2024, supplemental spoliation-related discovery request, requesting all correspondence by the NYAG with DOCCS regarding DOCCS's obligation to preserve documents. (Cannan Decl., Ex. 3). It was not. In a signed discovery response, NYAG Counsel for Defendant O'Connor stated:

> My client in this action is Thomas O'Connor and he has no records to produce in response to your request. On his behalf, I reserve his rights with respect to any documents in possession of DOCCS or the OAG [Office of the New York State Attorney General] which are protected by attorney-client privilege.

(Cannan Decl., Ex. 19).

Accordingly, it cannot be disputed that NYAG Counsel for Defendant O'Connor's responses to Plaintiffs' August 30, 2023, and September 20, 2024, discovery requests were materially incomplete. It also cannot be disputed that NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS Counsel was reasonably available to Defendant because it authored the letter. Moreover, NYAG Counsel included it as an exhibit to Defendant's opposition to Plaintiffs' renewed motion for spoliation sanctions—notably, the NYAG did not *produce* the document to Plaintiffs, but merely attached it to its motion when it though it might help Defendant. Because it failed to produce this responsive and critically relevant document that was plainly available to it and plainly responsive to multiple discovery

requests, the Court should find that any purported investigation that the NYAG Counsel for Defendant O'Connor's conducted in responding to Plaintiffs supplemental spoliation discovery requests was conducted in bad faith. Accordingly, the Court should find that NYAG Counsel for Defendant O'Connor's withholding production of its November 28, 2018, preservation letter to DOCCS Counsel is sanctionable under Fed. R. Civ. P. 26(g)(3).

## II.     DEFENDANT SHOULD BE SACTIONED UNDER FED. R. CIV. P. RULE 37

Pursuant to Fed. R. Civ. P. 37, a court may impose sanctions, including severe sanctions for a party's failure to disclose. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). To determine whether to grant sanctions under Fed. R. Civ. P. 37 for non-production of evidence, the Court employs a three-factor test and evaluates:

> (1) whether the party with control of the evidence "had an obligation to timely produce it," (2) whether that party had a "culpable state of mind," and (3) whether the withheld documents are "relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*In re. September 11th Ins. Coverage* Cases, 243 F.R.D.114, 125 (S.D.N.Y. 2007).

### A.     Defendant Was Obligated to Produce the Withheld Document

As discussed in Point I, it is beyond dispute that the NYAG Counsel for Defendant O'Connor was obligated to produce the November 28, 2018, preservation letter it sent to DOCCS Counsel. Arguably, the letter should have been produced contemporaneously to the discovery of the spoliation, which should have occurred when NYAG Counsel for Defendant O'Connor conducted searches for relevant evidence to fulfill its initial Fed. R. Civ. P. Rule 26(a) obligations and subsequent responses to Plaintiffs' initial discovery requests. The letter indisputably should have been produced when NYAG Counsel for Defendant O'Connor disclosed the spoliation in

March and May of 2023 and began arguing to Plaintiffs and the Court that it was not responsible for the spoliation. It is also indisputable that the letter should have been produced at the June 15, 2023, spoliation hearing when the Court specifically inquired as to who had the responsibility for finding out what relevant documents existed and taking steps to see they were preserved, and expressed concern over what, if any, steps were taken to preserve the spoliated evidence.

Also indisputable is that NYAG Counsel for Defendant O'Connor should have produced the letter after the Court's June 27, 2024, Order denying in part and granting in part Defendant, DOCCS, and ITS's motions to quash, in which the Court specifically ordered discovery regarding spoliation that included "*any litigation holds* applicable to the DOCCS email accounts of Sandy Guardiola, Grant Scriven and Thomas O'Connor, the circumstances relating to the failure to preserve those three email accounts, and the contents of the accounts." (*See* Dkt. No. 283). Indeed, as described above at Point I, the NYAG Counsel for Defendant O'Connor's November 28, 2018, preservation letter to DOCCS Counsel was directly responsive to Plaintiffs' August 30, 2023, and September 20, 2024, supplemental interrogatories and document requests. Yet, despite its possession of the plainly material and responsive preservation letter it had authored, NYAG Counsel for Defendant O'Connor maintained it had nothing.

### B.    NYAG Counsel for Defendant O'Connor Had a Culpable State of Mind

"The culpable state of mind element is satisfied by a showing that a party has breached a discovery obligation … through bad faith or gross negligence [or] ordinary negligence." *In re. Sept. 11th*, 243 F.R.D. at 125 (internal citation and quotation omitted).

Here, the Court should find that NYAG Counsel for Defendant O'Connor's failure to produce its November 28, 2018, preservation letter to DOCCS counsel was done in bad faith. As outlined above, Plaintiffs repeatedly sought evidence that the DOCCS email mailboxes of Ms.

Guardiola and other persons likely to have information relevant to this matter were spoliated by DOCCS despite notice of its duty to preserve that information. Although NYAG Counsel for Defendant O'Connor possessed direct evidence that DOCCS had notice of its preservation obligations—evidence that NYAG counsel specifically authored and sent to DOCCS in an attorney-client capacity under this matter's caption and docket number—it withheld that crucial evidence. While withholding that evidence, NYAG Counsel for Defendant O'Connor falsely maintained to Plaintiffs and the Court that DOCCS was not its client, and that it had no responsibility for DOCCS's conduct. Moreover, after having provided DOCCS with detailed attorney-client instruction on its preservation obligations in this specific matter, including directions to immediately suspend the automatic deletion of DOCCS email mailboxes, NYAG Counsel for Defendant O'Connor falsely maintained to Plaintiffs and the Court that the DOCCS email mailboxes had been "purged in the regular course of business." Plainly, DOCCS's permanent deletion of evidence after receiving detailed instructions of its preservation obligations from Counsel for New York State is not—or should not be—"the regular course of business." And in addition to making these false arguments, NYAG Counsel for Defendant O'Connor and DOCCS purposefully argued to this Court that Plaintiffs were to blame for the spoliation because their October 11, 2017, preservation letter was too "narrow" and did not more specifically request preservation of the spoliated DOCCS email mailboxes.

The repeated failure of the NYAG to comply with its basic discovery obligations and its withholding evidence it created that refuted the false arguments it was making to Plaintiffs and the Court plainly demonstrates willful misconduct. The Court should find that NYAG Counsel for Defendant O'Connor acted in bad faith in withholding the November 28, 2018, preservation letter to DOCCS.

### C.    The Withheld Documents Are Relevant to this Action

It cannot be disputed that the final element in the test for sanctions under Rule 37, relevance, is satisfied. The Court has permitted Plaintiffs to engage in spoliation discovery for well over a year precisely because of DOCCS's unjustifiable spoliation of key evidence in this action. Indeed, any contention that evidence of how and why DOCCS email mailboxes were spoliated is not relevant has already been rejected by the Court in deciding non-parties DOCCS's and ITS's motion to quash Plaintiffs' subpoenas. (*See* Dkt. No. 283). Additionally, "a finding that a party breached its discovery obligations in bad faith is sufficient to establish the relevance of untimely produced or destroyed evidence as a matter of law; a finding that a party breached its obligations through gross negligence is frequently sufficient." *In re. Sept. 11th*, 243 F.R.D. at 125 (internal citation and quotation omitted). The fact that NYAG Counsel for Defendant O'Connor demonstrated bad faith in withholding its November 28, 2018, preservation letter to DOCCS Counsel is further reason the Court should find those documents were relevant.

### III.    DEFENDANT'S IMPROPER WITHHOLDING OF THE NOVEMBER 28, 2018, PRESERVATION LETTER SUBSTANTIALLY PREJUDICED PLAINTIFFS AND REQUIRES SUBSTANTIAL SANCTIONS

While not a prerequisite for issuing sanctions, prejudice to the moving party may also be a significant consideration. *Martinez v. City of New York*, No. 16 Civ. 79, 2018 U.S. Dist. LEXIS 13409, at *67 (E.D.N.Y. Jan. 24, 2018) ("The absence of prejudice is given little weight, even though its presence tilts the scales heavily in favor of sanctions…."). Here, NYAG Counsel for Defendant O'Connor's improper withholding of its November 28, 2018, preservation letter to DOCCS Counsel has substantially prejudiced Plaintiffs. They have allowed Plaintiffs to proceed for over a year of spoliation discovery without the material evidence it possessed—evidence that NYAG Counsel for Defendant O'Connor and DOCCS both had crystal clear notice of their

obligation to preserve the DOCCS email mailboxes. Thus, the NYAG Counsel for Defendant O'Connor's contention to Plaintiffs and the Court that the DOCCS email mailboxes were spoliated because of an automatic deletion procedure turns out to be a red herring. As the November 28, 2018, preservation letter lays bare, NYAG Counsel for Defendant O'Connor advised DOCS to suspend the automatic deletion procedure well before the majority of the spoliation occurred.

NYAG Counsel for Defendant O'Connor's nondisclosure further prejudiced Plaintiffs by withholding the identities of the persons with direct knowledge of the failure to preserve evidence despite the notice to institute a litigation hold. Had NYAG Counsel for Defendant O'Connor properly produced its November 28, 2018, preservation letter at the beginning of spoliation discovery—and not after spoliation discovery had closed—Plaintiffs would have conducted their spoliation discovery in an entirely different manner. The preservation letter provides the logical starting point for spoliation discovery, *i.e.*, DOCCS Counsel, Kevin Bruen, who was directed by NYAG Counsel for Defendant O'Connor in an attorney-client capacity to instigate a litigation hold, but failed to do so. Had Plaintiffs been given this material information they would have begun spoliation discovery by deposing Mr. Bruen to learn what was done as a result of the November 28, 2018, preservation letter. Plaintiffs also would have used discovery to inquire into how NYAG Counsel for Defendant O'Connor followed up on its November 28, 2018, preservation letter. Plaintiffs have improperly been denied the opportunity to pursue that crucial spoliation discovery.

In addition to serving the three-fold purposes of discovery sanctions mentioned at the start of this brief, sanctions are also warranted based on the *years* of withholding the NYAG's preservation letter to DOCCS by multiple individuals representing Defendant O'Connor, based

on the relevance of the document to the pending spoliation motion which Plaintiffs have spent significant time pursuing through discovery and motion practice, based on the multiple instances in which the document was plainly responsive to Plaintiffs' requests, and based on NYAG Counsel for Defendant O'Connor's claims that such a document would only be in the possession of DOCCS until when, and only when, the document suited their position in a motion.

To remedy the prejudice Plaintiffs have suffered as a result of NYAG Counsel for Defendant O'Connor's inexcusable withholding of evidence, the NYAG, and not Defendant O'Connor individually, should be sanctioned with paying attorney's fees and expenses and providing further spoliation discovery.[6] *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011) ("[A] failure to comply timely with Rule 26(e) may subject a party to sanctions pursuant to Fed. R. Civ. P. 37(c)(1) including the need to reopen discovery and assess the related expenses."). Further protracting this already lengthy litigation by extending spoliation discovery, however, further prejudices Plaintiffs. To expedite the resolution of this matter, Plaintiffs, therefore, respectfully request that Former DOCCS Counsel Kevin Bruen and former NYAG Counsel Richard Benitez be directed to appear at the spoliation hearing scheduled for January 15, 2025, and give testimony, which Plaintiffs would have taken during spoliation discover had the letter been timely produced, regarding their "attorney-client" relationship in this matter and what actions were taken with regard to DOCCS's receipt of the November 28, 2018, preservation letter. Plaintiffs also respectfully request that present DOCCS Counsel Danielle May be directed to appear at the spoliation hearing to explain her declaration under penalty of

---

[6] Plaintiffs note that this request for fees and expenses related to NYAG Counsel for Defendant O'Connor's spoliation discovery misconduct overlaps with their prior request for fees and expenses in Plaintiffs' pending motion for spoliation sanctions. Plaintiffs now assert that attorney's fees and costs for spoliation discovery should be awarded solely on the grounds of the instant motion, which argues for a more severe sanction being issued for the actual spoliation should that motion be granted.

perjury that DOCCS did not have an obligation to institute a litigation hold in this matter after receipt of the November 28, 2018, preservation letter.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that this court grant Plaintiffs' motion for sanctions related to defendants' failure to disclose the NYAG's November 28, 2018, preservation letter to DOCCS.


Dated:  December 31, 2024
        New York, New York

Respectfully submitted,

BELDOCK LEVINE & HOFFMAN LLP

    /s/ Marc A. Cannan
By:   <u>/s/ M. Olivia Clark</u>
    Jonathan C. Moore
    Luna Droubi
    Marc A. Cannan
    Marc Arena
    M. Olivia Clark
    99 Park Avenue, PH/26th Floor
    New York, New York 10016
    (212) 490-0400

    *Attorneys for Plaintiffs*