UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
——————————————————

ALYSA OCASIO, ANDREW OCASIO, and
JAHAIRA HOLDER, *as Administratrix of
the Estate of Sandy Guardiola*,

                            Plaintiffs,

         v.

CITY OF CANANDAIGUA, *a municipal
entity*, CANANDAIGUA POLICE CHIEF
STEPHEN HEDWORTH, *in his individual
and official capacities*, CANANDAIGUA
POLICE SERGEANT SCOTT KADIEN, *in
his individual capacity*, DOCCS REGIONAL
DIRECTOR GRANT SCRIVEN, *in his
individual capacity*, DOCCS PAROLE
CHIEF DAWN ANDERSON, *in her
individual capacity,* DOCCS SENIOR
PAROLE OFFICER THOMAS O'CONNOR,
*in his individual capacity*, and DOCCS
SENIOR PAROLE OFFICER BETH HART-
BADER, *in her individual capacity*,

                           Defendants.
——————————————————

**DECISION AND ORDER**

18-CV-6712 MAV CDH

## <u>INTRODUCTION</u>

This action arises out of the death of Sandy Guardiola ("Ms. Guardiola"), an employee of the New York State Department of Corrections and Community Supervision ("DOCCS") who was fatally shot by a City of Canandaigua ("City") police officer on October 4, 2017, during a "wellness check" that was being carried out at the direction of then-DOCCS Regional Director Grant Scriven ("Mr. Scriven").

Following a settlement between Plaintiffs (who are Ms. Guardiola's children and the administratrix of her estate) and the City (Dkt. 235), as well as the Court's resolution of a motion to dismiss filed by the DOCCS defendants (Dkt. 258), the only remaining defendant in this action is DOCCS Senior Parole Officer Thomas O'Connor ("Defendant"), and the only remaining claim against him is for unlawful entry and/or unreasonable search and seizure under 42 U.S.C. § 1983 (*id.* at 15).

Presently before the Court are two related motions for sanctions filed by Plaintiffs. The first motion seeks spoliation sanctions, attorney's fees, and "other relief" pursuant to Federal Rule of Civil Procedure 37(e). (Dkt. 307). The second motion seeks discovery sanctions pursuant to Rules 26(g) and 37 for Defendant's failure to produce a litigation hold letter relevant to spoliation discovery. (Dkt. 317).

For the reasons below, Plaintiffs' motion for spoliation sanctions pursuant to Rule 37(e) (Dkt. 307) is granted in part and denied in part, and Plaintiff's motion for discovery sanctions pursuant to Rules 26(g) and Rule 37 (Dkt. 317) is denied.

## FACTUAL BACKGROUND

Ms. Guardiola was employed by DOCCS as a parole officer. (*See* Dkt. 167 at ¶ 39). Shortly before her death, she requested and received a transfer from DOCCS's Rochester office to its Binghamton Office, due to an alleged hostile work environment. (*Id.* at ¶¶ 42-51). However, before she could begin at the Binghamton office, Ms. Guardiola was involved in a car accident and granted medical leave. (*Id.* at ¶¶ 53-55). While she was on medical leave, Ms. Guardiola told colleagues that her DOCCS

email address was not working and advised them that her personal Gmail account was the best email address to contact her. (*Id.* at ¶¶ 57, 59, 63).

The parties disagree over the date that Ms. Guardiola was scheduled to begin at the Binghamton office. Defendant claims that she was expected to start on October 4, 2017. (*See* Dkt. 183-2 at 4). Plaintiffs claim that she was still on medical leave on October 4th, and point to various emails that, according to them, indicate she may have been scheduled to return on October 5th instead. (*See* Dkt. 167 at ¶¶ 60, 63-64, 77; Dkt. 192 at 8).

When Ms. Guardiola did not report to work on October 4th, the Binghamton Bureau Chief notified the DOCCS regional office. (Dkt. 167 at ¶ 80). Mr. Scriven then directed Defendant, who worked in the Rochester office, to go to Ms. Guardiola's residence in Canandaigua to conduct a wellness check. (*Id.* at ¶ 82, 84). After arriving at the apartment complex, Defendant called 9-1-1 to request a welfare check on Ms. Guardiola. (*Id.* at ¶ 84-86).

Canandaigua Police Department Sergeant Scott Kadien ("Mr. Kadien") responded to the call. (*Id.* ¶ 90). After allegedly conferring with Defendant about the circumstances of Ms. Guardiola's transfer out of the Rochester office, Mr. Kadien entered Ms. Guardiola's apartment alone. (*Id.* at ¶ 92-106). Mr. Kadien then made his way to Ms. Guardiola's bedroom, where she was in bed sleeping. (*Id.* at ¶108-09). Upon seeing Mr. Kadien, Ms. Guardiola reached for her service revolver under her pillow. (*Id.* at ¶ 112-13). Seeing this, Mr. Kadien shot Ms. Guardiola in the arm and head, and—after Ms. Guardiola's service revolver discharged, hitting the wall

opposite Mr. Kadien—shot her two more times, once in the head and once in the abdomen. (*Id.* at ¶ 113-15). Ms. Guardiola was transported to the hospital, where, after 20 minutes of attempted resuscitation, she was pronounced dead. (*Id.* at ¶ 132).

## PROCEDURAL BACKGROUND

This case has been referred to the undersigned for all non-dispositive pre-trial matters. (Dkt. 15; Dkt. 320).

On October 11, 2017 (one week after Ms. Guardiola's death), Plaintiffs' counsel served a preservation letter on DOCCS, requesting that DOCCS preserve any and all records it maintained on Ms. Guardiola, including "any and all information, documentation, logs, internal and external correspondences regarding Ms. Guardiola and her scheduled shift on October 4, 2017." (Dkt. 309-2 at 2-3). On November 17, 2017, and again on December 8, 2017, plaintiff Jahaira Holder, as administratrix of Ms. Guardiola's estate, filed a Notice of Intention ("NOI") with the New York State Office of the Attorney General ("OAG"). (Dkt. 309-3; Dkt. 309-4). Plaintiffs commenced this action on October 4, 2018. (Dkt. 1).

On March 2, 2023, Plaintiffs learned during discovery that Mr. Scriven's mailbox had been purged upon his retirement and could not be recovered, leading Plaintiffs to file an earlier motion for spoliation sanctions. (*See* Dkt. 309-6 at 5; Dkt. 207).[1] Shortly thereafter, Plaintiffs learned that Ms. Guardiola and Defendant's mailboxes had also been purged. (Dkt. 309-7 at 2). Ms. Guardiola's mailbox was

---

[1]     Magistrate Judge Marian W. Payson, to whom the matter was then-referred, subsequently denied this motion without prejudice to refiling after further development of the factual record. (Dkt. 225).

purged on December 12, 2017; Defendant's mailbox was purged on January 4, 2021; and Mr. Scriven's mailbox was purged on May 15, 2021 (collectively, the three email mailboxes are hereinafter referred to as "the Mailboxes"). (Dkt. 308 at 17; Dkt. 314 at 11).

The Mailboxes were purged automatically in accordance with the New York State Office of Information Technology's ("ITS") policy for inactive mailboxes (which is applicable to DOCCS as a client agency). (*See* Dkt. 265 at 35). Pursuant to this policy, a mailbox will "automatically begin the deprovisioning process and will be purged" after 60 days of inactivity, and the mailbox will be permanently deleted after 90 days of inactivity. (*Id.* at 36). Before the 60-day cutoff, DOCCS is notified of a mailbox's inactivity by a report listing all inactive mailboxes, and it can submit a ticket to flag that the mailbox should not be purged. (*Id.*). ITS, however, follows a different procedure for mailboxes subject to a legal hold. (*Id.*). Mailboxes subject to a legal hold are retained until the legal hold is released. (*Id.* at 37). When the legal hold is released, if there has been no outgoing mail activity for 60 days, then the mailbox will be permanently deleted 30 days after the release of the hold. (*Id.*).

There is no indication that DOCCS either placed a legal hold on Ms. Guardiola's mailbox or otherwise flagged it to ITS to prevent its purge. (*See* Dkt. 314 at 11; Dkt. 308 at 23). Defendant's and Mr. Scriven's mailboxes, on the other hand, were subject to legal holds that apparently pre-dated the October 4, 2017 death of Ms. Guardiola. (*See* Dkt. 265 at 37-38). Defendant's and Mr. Scriven's mailboxes

were purged 30 days after the release of these legal holds.  *(Id*.).  It is unclear why the holds were lifted.  (*See* Dkt. 314 at 24).

Plaintiffs' first motion for spoliation sanctions led to several discovery disputes, which, in turn, resulted in a Court Order permitting Plaintiffs to conduct spoliation discovery.  (Dkt. 283).  During spoliation discovery, Plaintiffs served DOCCS with interrogatories and document requests.  In response to Plaintiffs' interrogatories, DOCCS stated that it had no knowledge of any attempts made to access, review, print, or save the contents of the Mailboxes between October 4, 2017, and the dates on which the Mailboxes were purged.  (Dkt. 309-29 at 3-5).  DOCCS also stated that it had no obligation to preserve the Mailboxes and was unaware of any steps to preserve or place a legal hold on the Mailboxes.  (*Id*. at 5-6).  DOCCS further stated that it did not know who made the decision to release the legal holds on Defendant's and Mr. Scriven's mailboxes.  (*Id*. at 8-9).  When asked if the contents of the Mailboxes could be restored or replaced, DOCCS stated that it does not have the technological capability to restore or replace the Mailboxes.  (*Id*. at 6).  When asked to produce correspondence from the OAG to DOCCS regarding their obligation to preserve documents as a result of the October 4, 2017 incident, including any preservation letters, notice of claim, or lawsuit, DOCCS responded that no responsive records were found.  (*Id*. at 10).

On October 31, 2024, Plaintiffs filed the pending motion for spoliation sanctions based on DOCCS's failure to preserve the Mailboxes.  (Dkt. 307).  On

November 27, 2024, Defendant filed his response opposing Plaintiff's motion for spoliation sanctions.  (Dkt. 314).

In his response, Defendant indicated that on December 17, 2018, the Assistant Attorney General who had previously been the attorney of record "sent a litigation hold to DOCCS and informed DOCCS to take steps to collect and preserve documents, including emails."  (Dkt. 314 at 19).  Defendant also included a copy of this letter, which is actually dated November 28, 2018 (the "November 28, 2018 Litigation Hold Letter").  (*See* Dkt. 314-1 at 50-53).  This November 28, 2018 Litigation Hold Letter had not previously been disclosed to Plaintiffs.  (*See* Dkt. 315 at 4 n.1).  To the contrary, in support of their motion for spoliation sanctions, Plaintiffs repeatedly emphasized that while the OAG had sent a similar litigation hold letter to the New York State Police, there was no evidence that it sent such a letter to DOCCS.  (*See, e.g.*, Dkt. 308 at 5, 11, 18, 23, 24, 27).

On December 31, 2024, Plaintiffs filed a separate motion for discovery sanctions pursuant to Rules 26(g) and 37 based on the OAG's alleged failure to produce the November 28, 2018 Litigation Hold Letter.  (Dkt. 317).  Defendant again opposed.  (Dkt. 322).  Plaintiffs filed a reply on January 14, 2025.  (Dkt. 323).

The Court held oral argument on these motions on January 15, 2025.  (Dkt. 324).  At oral argument, the Assistant Attorney General appearing on behalf of Defendant indicated that he had only just found the November 28, 2018 Litigation

Hold Letter in the OAG's hard copy records when preparing Defendant's response to Plaintiff's motion for spoliation sanctions.[2]

## DISCUSSION

## I.    Motion for Spoliation Sanctions

### A.    Legal Standard

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted). "Historically, a party seeking sanctions for the spoliation of evidence was required to establish the following three elements: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim . . . such that a reasonable trier of fact could find that it would support that claim.'" *Stanbro v. Westchester Cnty.*

---

[2]    It is unclear from the record if the November 28, 2018 Litigation Hold Letter was actually sent to DOCCS and/or whether DOCCS received the letter. Based on its response to Plaintiffs' document requests during spoliation discovery, DOCCS seems to represent that it is not in possession of this letter. (Dkt. 309-29 at 10). In its motion papers, however, the OAG suggests that the letter *was* sent to DOCCS, as it states: "The only reason the [November 28, 2018 Litigation Hold Letter] was produced is because Plaintiff's [sic] counsel claimed that the OAG 'did not notify DOCCS' of its obligation to issue a litigation hold[.]" (*See* Dkt. 322 at 11). This argument would only have force if the OAG had actually sent the letter to DOCCS.

*Health Care Corp.*, No. 19 CIV 10857 KMK JCM, 2021 WL 3863396, at *4 (S.D.N.Y. Aug. 27, 2021) (alteration in original and quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

But Federal Rule of Civil Procedure 37(e) sets forth a different standard for sanctions for failing to preserve electronically stored information ("ESI"). *See id.* Under Rule 37(e), a court may impose sanctions "[i]f [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The extent of the sanctions permitted under Rule 37(e) depends on whether the court finds "prejudice to another party from loss of the information," or, alternatively, "that the [spoliating] party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(1)-(2). Rule 37(e) therefore requires a three-step inquiry:

> The first [step] is to decide if the rule applies at all—that is, if a party failed to take 'reasonable steps' to preserve electronically stored information 'that should have been preserved in the anticipation or conduct of litigation.' Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been 'prejudice to another party from loss of the information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider—regardless of prejudice to any other party— is whether the destroying party 'acted with the intent to deprive another party of the information's use in the litigation,' in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Karsch v. Blink Health Ltd.*, No. 17 CV 3880 VM BCM, 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) (quoting *Coan v. Dunne*, 602 B.R. 429, 438 (D. Conn. 2019)).

**B.** __Obligation to Preserve__

A threshold consideration in considering any claim of spoliation—including for spoliation of ESI under Rule 37(e)—is whether the alleged spoliating party had an obligation to preserve the evidence at the time it was destroyed. *Karsch,* 2019 WL 2708125, at *18. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* (quoting *Fujitsu*, 247 F.3d at 436). "Implicit in a party's duty to preserve evidence is the assumption that the party against whom sanctions are sought had 'control' over the missing evidence." *Vega v. Broome Cnty.*, No. 9:21-CV-788 BKS DJS, 2023 WL 6318919, at *8 (N.D.N.Y. Sept. 28, 2023) (quoting *Stanbro*, 2021 WL 3863396, at *11). Here, Defendant argues that he had no obligation to preserve the Mailboxes because they were outside of his control. (*See* Dkt. 314 at 15-18).

"Courts hold that even where a party . . . lacks actual physical possession or custody of requested documents . . ., such party may nevertheless be found to have *control* of the documents . . . if the party is legally entitled to the documents *or has the practical ability* to acquire the documents from a third-party[.]" *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (emphasis in original). "In assessing whether a party had the practical ability to acquire evidence from a third party, 'courts look at the interrelatedness of the relationship between the party against whom sanctions are sought and the entity with custody of the evidence.'" *Vega,* 2023 WL 6318919, at *8 (quoting *Stanbro*, 2021 WL 3863396, at *12). Courts in this

Circuit have "routinely found that in suits against individual corrections officers employed by [DOCCS], a sufficiently close relationship exists to impute DOCCS's control over evidence to the individual officers." *Id.* (quotation and original alterations omitted).

The facts in this case do not warrant a departure from this established approach. The rule permitting imputation of DOCCS's conduct to individual corrections officers is not premised on an individual officer's personal involvement with the spoliation. *See, e.g., Perez v. Molina*, No. 23-CV-801 (JHR) (BCM), 2025 WL 605478, at *5 n.3 (S.D.N.Y. Feb. 25, 2025) ("Although there is no evidence that any of the individual defendants were personally responsible for the loss of the [evidence], DOC's conduct is appropriately imputed to them for purposes of Rule 37(e)."); *Castro v. Smith*, No. 16-CV-8147 (JGLC), 2023 WL 5371311, at *7 (S.D.N.Y. Aug. 22, 2023) ("While [defendants] arguably 'did their part in this system,' there can be no dispute that had the video been preserved by DOC these Defendants would have been obligated to produce it, making imputation appropriate here.") (citation omitted); *see also Gross*, 304 F.R.D. at 142-43 (finding that corrections officer's counsel at the OAG's unsuccessful attempts to obtain requested documents from DOCCS did not preclude a finding of control). The rule is instead premised on the "close coordination" between DOCCS and its employees with respect to defending the claims at issue. *Gross*, 304 F.R.D. at 143; *see also Guillory v. Skelly*, No. 12-CV-00847S F, 2014 WL 4542468, at *8 (W.D.N.Y. Sept. 11, 2014) ("the production of other documents in this

action—through the intermediation of the Attorney General who represents both DOCCS and Defendants—was necessarily from DOCCS, rather than Defendants").

Defendant concedes that DOCCS has "produced voluminous records during discovery, including hundred[s], if not thousands, of e-mails." (Dkt. 314 at 9; Dkt. 314-2 at ¶¶ 16-17). Moreover, in reference to the November 28, 2018 Litigation Hold Letter, Defendant asserts that "[t]hrough his attorneys, Defendant. . . submitted a letter to DOCCS Office of Counsel, *directing them* to place a litigation hold to preserve all ESI related to [this] litigation on an ongoing and continuous basis." (Dkt. 314 at 9) (emphasis added). Accordingly, the Court finds that Defendant had the practical ability to cause the preservation of the Mailboxes and would also have had the practical ability to cause DOCCS to produce the Mailboxes if they had not been destroyed. Imputation is therefore appropriate here.

The Court further finds that DOCCS had an obligation to preserve the Mailboxes at the times they were destroyed. "Identifying the boundaries of the duty to preserve involves two related inquiries: *when* does the duty to preserve attach, and *what* evidence must be preserved?" *Moody v. CSX Transportation, Inc.*, 271 F. Supp. 3d 410, 426 (W.D.N.Y. 2017) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).

Ms. Guardiola's mailbox was purged on December 12, 2017—after Plaintiffs had served DOCCS with a preservation letter (October 11, 2017) and filed a NOI (December 8, 2017). Even if DOCCS could somehow not foresee on October 4, 2017, that Ms. Guardiola's death would lead to litigation (a dubious proposition given the

circumstances under which she was killed), it was certainly on notice that litigation was likely to be commenced by the time her mailbox was purged. *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991) ("the obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced"). In addition, because of the close involvement of other DOCCS employees in the circumstances of her death, DOCCS should have known that Ms. Guardiola's mailbox would be relevant under the "extremely broad concept" of relevance in discovery. *See Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010)

With respect to Defendant's and Mr. Scriven's mailboxes, which were purged on January 4, 2021, and May 15, 2021, respectively, this case had already been pending for over two years when the information contained therein was destroyed. Moreover, by the time these mailboxes were purged, DOCCS had received Plaintiffs' aforementioned preservation letter and NOI, as well as (potentially) the November 28, 2018 Litigation Hold Letter from the OAG directing DOCCS to preserve all relevant ESI. Contrary to Defendant's contention, the fact that Mr. Scriven was not named as a defendant until after his email was purged did not mean "there was no need to preserve his email." (*See* Dkt. 314 at 19). By the time Mr. Scriven's mailbox had been purged, Plaintiffs had already filed an amended complaint identifying Mr. Scriven, and email communications involving Mr. Scriven, as relevant to this action. (*See* Dkt. 88). The obligation to preserve arises in connection with evidence that a party knows or should know is relevant, regardless of whether a particular individual

is named in the action.  *See In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (quoting *Fujitsu*, 247 F.3d at 436).  The obligation to preserve requirement is thus satisfied in this case.

### C.   Failure to Take Reasonable Steps to Preserve

"Once the obligation to preserve relevant ESI attaches, the party in possession of that ESI must take 'reasonable steps' to preserve it."  *Karsch*, 2019 WL 2708125, at *19 (quoting Fed. R. Civ. P. 37(e)).  Here, based on the results of Plaintiffs' spoliation discovery, it is not difficult to conclude that DOCCS failed to take reasonable steps to preserve relevant ESI.  DOCCS takes the untenable position that it had no obligation to preserve the Mailboxes, and states outright that it has no knowledge of any steps taken to access, review, print, or save the contents of the Mailboxes, or to preserve or place a legal hold on them in connection with the events underlying this litigation. (Dkt. 309-29 at 3-6).  As discussed above, this position cannot be squared with DOCCS's receipt of multiple preservation notices from Plaintiffs and the OAG, as well as common sense.  In addition, neither DOCCS nor Defendant can explain why the legal holds on Defendant's and Mr. Scriven's mailboxes—which pre-dated this litigation—were lifted, resulting in their purging. (*Id.* at 8-9).

"Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy[.]" *Zubulake*, 229 F.R.D. at 431 (quotation

omitted); *see also Castro*, 2023 WL 5371311, at *10 ("As DOC failed to suspend their routine document destruction policy, DOC failed to take reasonable steps to preserve relevant ESI."). The record indicates that DOCCS took *no* steps to preserve the Mailboxes, much less reasonable steps. The second step of the Rule 37(e) test is thus plainly satisfied here.

### D.    <u>Prejudice</u>

The next step in the Court's analysis is to consider whether Plaintiffs have suffered prejudice. *See* Fed. R. Civ. P. 37(e)(1). Plaintiffs argue they have been prejudiced by the spoliation of the Mailboxes because the Mailboxes could have shown that Defendant was aware that the situation at Ms. Guardiola's apartment was not urgent. (Dkt. 308 at 26). Plaintiffs also claim that the Mailboxes would have shed light on "the source of the false information that resulted in the fatal wellness check." (*Id.*). Defendant argues that "Plaintiffs have failed to establish that there were any relevant e-mail communications contained within these three e-mail boxes that were deleted or withheld from Plaintiffs." (Dkt. 314 at 20).

"In order to impose a sanction under Rule 37(e)(1), the court must have some evidence regarding the particular nature of the missing ESI in order to evaluate the prejudice it is being requested to mitigate." *Moody*, 217 F. Supp. 3d at 430 (quotation omitted). Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other. . . . [Rather, it] leaves judges with discretion to determine how best to assess prejudice in particular cases." *Ungar v. City of New York*, 329 F.R.D.

8, 16 (E.D.N.Y. 2018) (alterations in original and quoting Fed. R. Civ. P. 37(e), Advisory Committee Notes to 2015 Amendments).

"Proof of relevance does not necessarily equal proof of prejudice." *Karsch*, 2019, WL 2708125, at *20 (quotation omitted). "In many cases, however, it would be unfair to require 'affirmative proof as to whether the evidence would have been advantageous to the movant' as a predicate to subsection (e)(1) sanctions." *Id.* (quoting *Ungar*, 329 F.R.D. at 16). "[T]he Second Circuit has cautioned district courts against 'holding the prejudiced party to too strict a standard of proof regarding the likely contents of . . . destroyed evidence." *Moody*, 217 F. Supp. 3d at 430 (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)) (alteration in original). "While the moving party need not establish the loss of a smoking gun, it is sufficient if the existing evidence plausibly suggests that the spoliated ESI could support the moving party's case." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 495 (S.D.N.Y. 2022) (quotation and alteration omitted). But the moving party must come forward "with plausible, concrete suggestions as to what the destroyed evidence might have been." *Moody*, 271 F. Supp. at 430 (quotation and alteration omitted).

Here, with respect to Ms. Guardiola's mailbox, Plaintiffs fail to put forward any concrete suggestions as to what evidence might have been destroyed. (*See* Dkt. 308 at 26-27). Importantly, it is undisputed that Ms. Guardiola's DOCCS email account was not working in the month prior to her death, and that she had been communicating with other DOCCS employees through her personal Gmail account.

(*See* Dkt. 314 at 21-22).  Plaintiffs have access to these communications through a Court Order directing Google to disclose "Gmail emails sent to or from any email address ending in '@doccs.ny.gov' dated between September 6, 2017 and October 5, 2017." (*See* Dkt. 215).  Under these circumstances, the Court cannot conclude that the destruction of Ms. Guardiola's mailbox caused prejudice to Plaintiffs.

As for Defendant's and Mr. Scriven's mailboxes, Plaintiffs are more specific in suggesting what evidence they believe might have been destroyed.  (*See* Dkt. 308 at 26-27).  Specifically, they assert that these mailboxes "likely contained information regarding where and when Ms. Guardiola was supposed to return to work, who knew about her return, and why Scriven and O'Connor decided to go to her home or whether they had any contact with Ms. Guardiola in the days before her death." (*Id*. at 26).

With respect to Defendant's mailbox, the Court finds that the existing evidence still falls short of establishing prejudice.  Plaintiffs have come forward with no evidence to support their contention that Defendant's mailbox likely contained relevant information.  Defendant has declared under penalty of perjury that he "never sent any e-mails to anyone regarding Sandy Guardiola" and "never received any e-mails from anyone regarding Sandy Guardiola before [he] went to her apartment building on October 4, 2017." (Dkt. 266-9 at ¶¶ 6-7).  Defendant has explained that he was aware of his obligation to preserve electronic records pertaining to Ms. Guardiola, but that he had no such records, and accordingly had "nothing to preserve or produce[.]" (*Id*. at ¶ 15).  Plaintiffs have pointed to no evidence to contradict this

- 17 -

assertion or to support the conclusion that Defendant used his DOCCS email to communicate with or about Ms. Guardiola.

Plaintiffs argue without citation to authority that they "should not be bound to O'Connor's self-serving statements that he had no relevant ESI." (Dkt. 308 at 26). But it is a general rule in discovery that—absent some proof of untruthfulness—the Court will accept a party's "good faith averment that the items sought simply do not exist[.]" *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (citation omitted); *see also Margel v. E.G.L. Gem Lab Ltd.*, No. 04 CIV. 1514 PAC HBP, 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) ("Litigants commonly suspect that they are not getting all the documents they have requested and that an adversary is holding something back. That suspicion, however, will not sustain the imposition of sanctions. . . . Since defendants do not cite any specific evidence impugning plaintiffs' assertions that their production is complete, there is no basis for a finding of misconduct on the part of the plaintiffs or an award of sanctions."). Here, while there is certainly evidence that DOCCS did not comply with its discovery obligations, there is nothing in the record to support the conclusion that Defendant was being dishonest when he represented, under penalty of perjury, that his mailbox did not contain any emails related to Ms. Guardiola. Plaintiffs' suspicions to the contrary do not warrant a finding of prejudice as to Defendant's mailbox.

However, the Court reaches a different conclusion with respect to Mr. Scriven's mailbox. The record in this case includes, according to the OAG, "numerous emails

to and from Mr. Scriven regarding Ms. Guardiola, her issues in the Rochester office and projected return to work, on October 4, 2017, in the Binghamton Office," which were collected during DOCCS's internal investigation into Ms. Guardiola's death. (*See* Dkt. 152-4 at 5; Dkt. 325-2).  The OAG also states that "[t]he emails clearly indicate that Scriven was aware of Ms. Guardiola's work issues at the Rochester Office . . . and her intent to report to work in Binghamton on October 4, 2017." (Dkt. 152 at ¶ 19).  But unlike Defendant's representations as to his own mailbox, there has not been a clear representation from DOCCS or the OAG or Mr. Scriven himself that the existing emails constitute the entire universe of relevant emails in Mr. Scriven's mailbox.  *See Karsch*, 2019 WL 2708125, at *20 ("although plaintiff repeatedly characterizes defendants' assertions concerning the content of the missing emails as 'pure speculation,' . . . he and his employees were in a position to submit declarations or other non-speculative *evidence* as to what they did (and did not discuss) with one another on email, but failed to do so").

Consequently, the existence of numerous relevant emails to and from Scriven "raises questions . . . about the existence of other potentially probative emails not currently known to [Plaintiffs]" due to the mailbox's destruction. *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 64 (S.D.N.Y. 2020).  "[B]ecause there can be no assurance that the [existing] emails constitute all of the meaningful emails" in Scriven's mailbox, "it is equally plausible to conclude" that the purge of his mailbox permanently destroyed other probative email communications.  *Id.* (quoting *Coan*, 602 B.R. at 440); *see also N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,

No. 17-CV-5495 (HG), 2024 WL 4744612, at *5 (E.D.N.Y. Oct. 28, 2024) (concluding that recovery of some emails did not preclude a finding of prejudice from destruction of email mailbox).

The Court finds that Plaintiffs have plausibly shown, in accordance with the applicable standard, how the contents of Mr. Scriven's mailbox could have helped their case. The primary factual dispute in this case—Defendant's state of mind in carrying out the "wellness check" on Ms. Guardiola—turns, under Plaintiffs' theory, on Ms. Guardiola's issues with her colleagues in the Rochester office, as well as DOCCS's understanding of when Ms. Guardiola was anticipated to return to work. The existing emails to and from Mr. Scriven directly address these topics, and it is plausible that the purge of Mr. Scriven's mailbox deprived Plaintiffs of additional emails that would have been probative of their theory that the wellness check was pretextual. (*See* Dkt. 308 at 26). Accordingly, the Court finds that Plaintiffs have established prejudice from the destruction of Mr. Scriven's mailbox for the purposes of Rule 37(e)(1).

## E.    __Intent to Deprive__

The Court next considers whether, regardless of prejudice, there was an intent to deprive Plaintiffs of the use of the Mailboxes in this litigation. "Such a finding is a necessary predicate to the imposition of the particularly harsh sanctions permitted under [Rule 37(e)(2)]." *Karsch*, 2019 WL 2708125, at *21 (quotation omitted).

The Second Circuit recently made clear that "imposition of a sanction under Rule 37(e)(2) requires a specific finding of 'intent to deprive another party of the

information's use in the litigation.'" *Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025) (quoting Fed. R. Civ. P. 37(e)); *accord Karsch*, 2019 WL 2708125, at *21 ("The intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence.") (quotation and alteration omitted).  Consequently, intent to deprive cannot be shown by negligence or even gross negligence.  *See Hoffer*, 128 F.4th at 438.  However, "[p]roving such specific intent . . . frequently depends upon circumstantial evidence." *Id.* at 440.  "[C]ourts in this Circuit have inferred an 'intent to deprive' through circumstantial evidence where the [loss of ESI] could not be 'credibly explained' other than by bad faith." *Bursztein v. Best Buy Stores, L.P.*, No. 20 CV 00076 AT KHP, 2021 WL 1961645, at *8 (S.D.N.Y. May 17, 2021) (quoting *Moody*, 271 F. Supp. 3d at 431). Intent to deprive is determined by a preponderance of the evidence and is appropriately decided by the Court.  *Hoffer*, 128 F.4th at 439.

Here, Plaintiffs have not demonstrated that DOCCS acted with intent to deprive because its actions can be credibly explained as not involving bad faith.  It is undisputed that Defendant's and Mr. Scriven's mailboxes were purged due to the release of legal holds that pre-dated this litigation.  The only question is whether the release of the holds and DOCCS's subsequent failure to prevent the purge was intentional. The Court finds plausible Defendant's explanation that these holds may have been lifted at the conclusion of a separate lawsuit, and that either DOCCS or ITS failed to institute a separate legal hold as to this lawsuit due to administrative error, ultimately leading to the purge of the mailboxes.  (*See* Dkt. 314 at 24).  As

countervailing evidence, Plaintiffs point to DOCCS's failure to heed the multiple reports warning that the Mailboxes would be automatically deleted unless action was taken.  (*See* Dkt. 308 at 23).  This evidence, however, is insufficient for the Court to infer that DOCCS acted with the specific intent to deprive, rather than with negligence or incompetence.[3]  It is entirely plausible that these warnings were simply not appropriately reviewed. *See Bursztein*, 2021 WL 1961645, at *8 (S.D.N.Y. May 17, 2021) (finding Rule 37(e)(2) sanctions inappropriate where it was unclear if the spoliating party destroyed ESI "to intentionally deprive Plaintiff of evidence or if the loss of ESI [was] simply the product of incompetence"); *Karsch*, 2019 WL 2708125, at *25 (finding Rule 37(e)(2) sanctions not warranted where spoliation "appear[ed] to be the result of gross negligence rather than a specific intent to deprive defendants in this action of relevant evidence," and despite spoliating party falling "far short of its professional and ethical obligations").

Plaintiffs also fail to show that DOCCS acted with intent to deprive as to Ms. Guardiola's mailbox.  DOCCS's apparent failure to institute *any* legal hold on Ms. Guardiola's mailbox is certainly more egregious than its conduct in connection with the loss of Defendant's and Mr. Scriven's mailboxes.  However, the failure to institute a legal hold is generally insufficient to support a finding of intent to deprive.  *See CBF*

---

[3]    Also, given that Defendant has sworn under penalty of perjury that he had no emails about Ms. Guardiola (*see* Dkt. 266-9 at ¶ 15), there is no basis for the Court to infer that DOCCS would have thought at the time his mailbox was purged that it contained material evidence. *See Moody*, 271 F. Supp. 3d at 431 (considering whether "evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case" as one factor in determining if a party acted with an intent to deprive).

*Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13 CV 2581 PKC JLC, 2021 WL 4190628, at *18-19 (S.D.N.Y. Aug. 18, 2021) (finding no intent to deprive even though spoliating party "never issued a litigation hold, even after the lawsuit was initiated"). On the record before the Court, it is plausible that DOCCS's conduct with respect to Ms. Guardiola's mailbox consisted of failing to institute a litigation hold and failing to appropriately review the warnings indicating that the mailbox was to be deleted. That does not rise to the level of intent to deprive.

Moreover, "[e]ven if the failure to impose a litigation hold were held to constitute an intent to deprive, the Court is not required to issue sanctions under (e)(2) if the sanctions are disproportional to the prejudice." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14 CV 1254 SHS OTW, 2019 WL 6838672, at *6 (S.D.N.Y. Dec. 16, 2019). As discussed above, Ms. Guardiola's exclusive use of her personal Gmail account in the month leading up to her death undercuts any assertion by Plaintiffs that they are prejudiced by the loss of her DOCCS mailbox. Ms. Guardiola's use of her personal email also tends to undercut any finding of intent to deprive. Since the record indicates that Ms. Guardiola's DOCCS mailbox did not contain any probative emails, it would be a significant leap for the Court to then ascribe to DOCCS the specific intent of "gaining an advantage in this litigation" by allowing the mailbox to be purged. *See Charlestown Cap. Advisors*, 337 F.R.D. at 67 (quoting *Karsch*, 2019 WL 2708125, at *22).

Plaintiffs assert that DOCCS's actions are "far more egregious than those taken by the defendant in *Moody*, which this Court found to constitute intentional

spoliation." (Dkt. 308 at 25). But in *Moody*, the defendant: (1) offered an explanation for its conduct that the Court found "unfathomable" and "incredible"; and (2) failed to preserve "critical and irreplaceable" ESI that would have "conclusively determined" a "critical factual dispute." 271 F. Supp. 3d at 426-27, 430. Unsurprisingly, numerous courts have found that the spoliating conduct in *Moody* sets an exceedingly high bar. *See, e.g.*, *Vega*, 2023 WL 6318919, at *14 (finding that the loss of crucial body-camera footage due to confusion or inadvertent oversight could "be credibly explained as not involving bad faith" and was therefore distinguishable from *Moody*); *CBF Industria de Gusa S/A*, 2021 WL 4190628, at * 18 (concluding that the finding of intent to deprive in *Moody* was "on the basis of far stronger circumstantial evidence" even though "Defendants never issued a litigation hold, even after the lawsuit was initiated, or took any reasonable steps to ensure that ESI was being preserved"); *Bursztein*, 2021 WL 1961645, at *8 ("Although Best Buy has not offered a single credible excuse for losing the surveillance footage or the other EIS at issue, its conduct does not compare to the more proactive misconduct in *Moody*."); *Fashion Exch.*, 2019 WL 6838672, at *5 ("While the degree of negligence and/or incompetence in discovery displayed by Plaintiff in this suit is stunning, it does not rise to the level of being 'so stunningly derelict' that [the court in *Moody* found] akin to an intent to deprive.").

As these cases demonstrate, the Court cannot necessarily infer an intent to deprive from even egregious conduct. *Cf. Hoffer*, 128 F.4th at 440 ("the intent to deprive standard is both stringent and specific") (quotation omitted); *see also Fashion*

*Exch.*, 2019 WL 6838672, at *6 ("If Plaintiff's abject failure to take reasonable steps to preserve its ESI was found sufficient to also award sanctions under Rule 37(e)(2), that would render meaningless the separate 'intent to deprive' requirement."). Here, where there is a lack of evidence of proactive misconduct by DOCCS, an otherwise credible explanation for the spoliation that does not involve bad faith, and no indication that crucial, dispositive evidence was lost because of the spoliation, the Court concludes that it cannot infer an intent to deprive from DOCCS's conduct.

The Court's decision should not be interpreted to condone DOCCS's actions. If the standard to impose sanctions under Rule 37(e)(2) were gross negligence, rather than specific intent, it would be easily satisfied here. Given DOCCS's receipt of Plaintiffs' preservation letter and NOI, the fact that a criminal investigation and a DOCCS internal investigation were ongoing, and the generally disturbing circumstances of Ms. Guardiola's death—which had only occurred two months earlier—DOCCS's failure to prevent the purge of Ms. Guardiola's mailbox was shockingly incompetent. Likewise, DOCCS's overall failure to preserve the Mailboxes, and its dubious position that it had no obligation to do so, evinces a serious shortcoming in its compliance with discovery obligations. Nevertheless, the Court is unable to conclude that that there was an intent to deprive. Rule 37(e)(2) sanctions are therefore not warranted.

## F.    **Appropriate Remedy**

Because of its finding that Plaintiffs were prejudiced by the loss of Mr. Scriven's mailbox, the Court must determine what remedial measures are

appropriate under Rule 37(e)(1). The Rule provides that the Court, "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). As another court has explained:

> The advisory committee note to the amendment of Rule 37(e)(1) provides that in an "appropriate case," a court may impose "serious" sanctions on the spoliating party, "such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." . . . However, the advisory committee cautions that "[c]are must be taken [ ] to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2)."

*Leidig v. Buzzfeed, Inc.*, No. 16 CIV. 542 (VM) (GWG), 2017 WL 6512353, at *13 (S.D.N.Y. Dec. 19, 2017) (quoting Fed. R. Civ. P. 37(e)(1) Advisory Committee's Notes to 2015 Amendments). Subject to these limitations, this Court has discretion to fashion a remedy based on the particular facts of the case. *N. Am. Soccer League*, 2024 WL 4744612, at *6 (citing *Fujitsu*, 247 F.3d at 436).

Since the Court is only imposing sanctions pursuant to Rule 37(e)(1), Plaintiffs' requested remedies of striking Defendant's answer or giving an adverse inference at trial (*see* Dkt. 308 at 28-29) are not permitted. *See, e.g., Perez*, 2025 WL 605478, at *6 ("[B]ecause sanctions are being imposed pursuant to subsection (e)(1) only, the jury should not be instructed that it 'may or must presume' that the evidence was unfavorable to the defendants."); *N. Am. Soccer League*, 2024 WL 4744612, at *6 (cautioning prejudiced party that its proposed jury instruction pursuant to Rule 37(e)(1) "appears to intrude on Rule 37(e)(2)(B)"). But the Court will grant Plaintiffs'

request to present evidence of spoliation at trial as to Mr. Scriven's mailbox.[4]  (*See* Dkt. 308 at 30).

Under Rule 37(e)(1), a court may permit the prejudiced party "to present evidence to the jury concerning the loss and likely relevance of information and instruct[ ] the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37(e)(1) Advisory Committee's Notes to 2015 Amendments.  This remedy is distinct from a permissive adverse inference instruction under Rule 37(e)(2) and does not "encroach on [the trial judge's] authority to determine the scope of any spoliation evidence to be presented at trial and to craft any related jury instructions on a full evidentiary record." *In re Keurig*, 341 F.R.D. at 528 (quotation omitted).  Allowing Plaintiffs to present evidence of spoliation as to Mr. Scriven's mailbox will "help 'rectify the evidentiary imbalance'" that DOCCS created by allowing the mailbox to be purged, and will provide the jury with "context for that evidentiary imbalance, which is itself relevant evidence going to the parties' credibility and other factual issues." *Id.* (quoting *Karsch*, 2019 WL 2708125, at *27).  The precise scope of admissible evidence regarding spoliation is more appropriately addressed at trial by the presiding judge.  *Fashion Exch.*, 2019 WL 6838672, at *7 n.14.  Accordingly, the Court declines at this juncture to issue a more detailed ruling in this regard.

---

[4]    Plaintiffs also argued originally that they are entitled to attorney's fees under Rule 37(e)(1), but "now assert that attorney's fees and costs for spoliation discovery should be awarded solely on the grounds of" their subsequent motion for discovery sanctions.  (Dkt. 318 at 24 n.6).  The Court therefore does not consider this remedy in the context of the motion for spoliation sanctions.

For all these reasons, Plaintiffs' motion for spoliation sanctions (Dkt. 307) is granted to the extent that Plaintiffs may present evidence of spoliation at trial regarding Mr. Scriven's mailbox. All other requested relief is denied.

## II.    Motion for Rule 26(g) and Rule 37 Sanctions

As set forth above, following the OAG's inclusion of the November 28, 2018 Litigation Hold Letter in Defendant's response to Plaintiffs' motion for spoliation sanctions, Plaintiffs moved for discovery sanctions against the OAG pursuant to Rules 26(g) and Rule 37. (Dkt. 317). For the reasons below, the Court denies this motion.

### A.    Rule 26(g)

Under Rule 26(g), every discovery response must be signed by an attorney of record. Fed. R. Civ. P. 26(g)(1). "'By signing, an attorney . . . certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, a discovery response is 'not interposed for any improper purpose' and an initial disclosure 'is complete and correct as of the time it is made.'" *Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47, 56 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 26(g)(1)(A)-(B)) (alteration in original omitted). Rule 26(g) "simply requires that the attorney make a reasonable inquiry into the factual basis of his response[.]" Fed. R. Civ. P. 26(g) Advisory Committee's Notes to 1983 Amendment.

"If a certification violates [Rule 26(g)] without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). "Significantly,

although [Rule 26(g)(3)] is phrased in mandatory terms . . . courts have interpreted the Rule to include a prejudice requirement." *State v. United States Dep't of Com.*, 461 F. Supp. 3d 80, 88 (S.D.N.Y. 2020) (collecting cases). "Put another way, sanctions under Rule 26(g) are not appropriate when a party has not been harmed by the violation." *Id.* (quotation omitted).

Plaintiffs identify the OAG's responses to two discovery requests as allegedly sanctionable for its failure to produce the November 28, 2018 Litigation Hold Letter: (1) Plaintiffs' August 30, 2023 requests to the DOCCS defendants for "all documents regarding legal preservation and retention" and "all documents regarding consultations with DOCCS's legal department regarding any legal preservation and or retention obligations;" and (2) Plaintiffs' September 20, 2024 request directly to the OAG for "all correspondence by the [OAG] with DOCCS regarding DOCCS's obligation to preserve documents." (Dkt. 318 at 17-18).

The Court finds that the failure to produce the November 28, 2018 Litigation Hold Letter did not cause Plaintiffs any prejudice or "substantive harm." *See State*, 461 F. Supp. 3d at 88. In support of their motion for spoliation sanctions, Plaintiffs argued that DOCCS's obligation to preserve the Mailboxes arose well before the November 28, 2018 Litigation Hold Letter. The Court has concluded the same. Therefore, the impact of the November 28, 2018 Litigation Hold Letter is negligible, as it merely merely reaffirms that DOCCS failed to satisfy its obligation to preserve the Mailboxes—a conclusion that is plainly evident without the letter.

Plaintiffs argue that if the November 28, 2018 Litigation Hold Letter had been earlier produced, they could have pursued additional spoliation discovery. (Dkt. 318 at 23). However, Plaintiffs' proposed additional spoliation discovery centers around DOCCS's failure to institute a legal hold on the Mailboxes. (*See id.*). As explained above, the failure to institute a legal hold cannot sustain a finding of intent to deprive. Moreover, the failure to institute a legal hold does not bear on the existence of probative emails in Ms. Guardiola's or Defendant's mailboxes. In other words, the additional spoliation discovery that could have been pursued because of the November 28, 2018 Litigation Hold Letter would not have altered the Court's spoliation analysis or its determination of the appropriate remedy. For this reason, the Court concludes that Rule 26(g) sanctions are not warranted.

### B.  Rule 37

"Rule 37(b) provides a non-exclusive list of sanctions that the court may, in its discretion, impose on a party who 'fails to obey an order to provide or permit discovery[.]" *Ceglia v. Zuckerberg*, No. 10-CV-00569A F, 2012 WL 3527930, at *3 (W.D.N.Y. Aug. 15, 2012) (quoting Fed. R. Civ. P. 37(b)(2)(A)). "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." *Id.* (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991)).

Under Rule 37(c), a court may also impose sanctions, including attorney's fees, on a party that "fails to provide information . . . as required by Rule 26(a) or (e) . . .

unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"In this context, harmlessness means an absence of prejudice." *Hassoun v. Searls*,
524 F. Supp. 3d 101, 111 (W.D.N.Y. 2021) (quotation and alteration omitted). "A
district court has 'wide discretion in imposing sanctions under Rule 37,' and may
consider a wide variety of factors in deciding whether and how do so—the Rule's
bottom-line requirement, as its text indicates, is 'only that the district court's orders
be just.'" *State*, 461 F. Supp. 3d at 91-92 (quoting *S. New England Tel. Co. v. Global
NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

Plaintiffs ask that the OAG—and "not Defendant O'Connor individually"—be
sanctioned with attorney's fees and expenses under Rule 37. (Dkt. 318 at 24). The
Court declines to imposes sanctions pursuant to Rule 37(c)(1) because, as discussed
above, there was no prejudice to Plaintiffs as a result of the late disclosure of the
November 28, 2018 Litigation Hold Letter.

The Court also declines to impose sanctions pursuant to Rule 37(b)(2)(A)
because Plaintiffs have not shown that "a party or a party's officer, director, or
managing agent" failed to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). On
June 27, 2024, the Court issued an Order permitting Plaintiff to conduct spoliation-
related discovery that "may encompass . . . any litigation holds applicable to [the
Mailboxes]." (Dkt. 283 at 1-2). Plaintiff then served a discovery demand for such
document. Defendant responded in relevant part that:

> any documents in the possession of DOCCS or the OAG . . . are protected
> by the attorney-client privilege. . . . To the extent you are seeking
> communications between the OAG and DOCCS, you must request those
> documents from DOCCS and/or the OAG by subpoena so they can

respond appropriately and raise any necessary objections, such as attorney client privilege.

(Dkt. 319-19). Plaintiffs did not follow up on this response by, for example, narrowing the scope of their request, so as to only inquire into the basic details of any litigation hold letters. *See Roytlender v. D. Malek Realty, LLC*, No. 21-CV-00052(MKB)(JMW), 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022) ("The Court finds no authority . . . which supports a finding that questions concerning *whether* a litigation notice was ever sent violates any attorney-client privilege."). Plaintiffs also did not seek the Court's intervention or a ruling that such objection was improper. The Court does not find the interposition of an objection to a discovery request to constitute disobedience of a discovery order under these circumstances.

For all these reasons, Plaintiffs' motion for discovery sanctions related to the November 28, 2018 Litigation Hold Letter (Dkt. 317) is denied.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for spoliation sanctions (Dkt. 307) is granted in part and denied in part. Specifically, Plaintiffs' motion for spoliation sanctions is granted to the extent that Plaintiffs may present evidence of spoliation at trial regarding Mr. Scriven's mailbox and denied in all other respects. Plaintiffs' motion for discovery sanctions pursuant to Rules 26(g) and 37 (Dkt. 317) is denied.

**SO ORDERED**.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
     April 9, 2025